**In re ORIGINAL AUTO PARTS DISTRIBUTORS, INC. also trading as Original Auto Parts, Debtor.**

Bankruptcy No. 80 B 20282.
Adv. No. 81 Adv. 6001.

United States Bankruptcy Court,
S. D. New York.

March 12, 1981.

Dan Brecher, New York City, for plaintiff.

Hahn & Hessen, New York City, for Official Creditors' Committee.

Leinwand, Maron, Hendler & Krause, New York City, for debtor-defendant.

**DECISION ON COMPLAINT OF TR–3 CHEMICAL CORPORATION RE RECLAMATION OF GOODS.**

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The determination of this controversy hinges upon whether or not a seller's demand for reclamation of goods sold to a debtor must always be made in writing before ten days after receipt of the goods by the debtor. In this case, the seller did not learn of the debtor's insolvency until more than ten days after receipt of the goods.

The seller, TR–3 Chemical Corporation, filed a complaint objecting to the discharge of the obligation owed to it by the debtor, Original Auto Parts Distributors, Incorporated. In addition, TR–3 seeks an order directing Original to turn over and surrender certain goods which it has in its possession. The Official Creditors' Committee has moved for an order pursuant to Rules 12(b) and (c) and 56(b) of the Federal Rules of Civil Procedure granting summary judgment as to counts three and four of TR–3's complaint; the counts dealing with the turn over of goods sold by TR–3 to Original. In response, TR–3 filed a cross-motion seeking an order granting it partial summary judgment on counts three and four of its complaint and denying the Creditors' Committee motion.

The debtor filed its petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq., on June 27, 1980; TR–3 filed a proof of claim in the amount of $50,137.50 on August 8th, 1980. In its complaint TR–3 alleges the following facts:

1. In January, 1980 the debtor communicated with TR–3 to request the purchase of

2,000 cases of auto cleaner and glaze manufactured by TR–3.

2. Based upon the request of the debtor and upon the debtor's representations that it had the ability to pay for the goods, TR–3 delivered the goods on credit.

3. The goods, which had a value of $50,137.50, were received by the debtor on March 7, 1980.

4. The debtor · obtained the goods by false pretenses and false representations in light of the fact that it had ordered the goods during a period when it knew that it was insolvent and had been negotiating with its creditors.

5. The debtor now has in its possession approximately 1,000 cases of the goods delivered by TR–3, each cash worth $25.80.

6. On or about June 23, 1980 TR–3 mailed and served a notice of reclamation of the goods upon the debtor.

7. On or about June ˙23, 1980 TR–3 caused a Telex to be served upon the debtor by Western Union, demanding reclamation of the goods.

In its answer the Creditors' Committee denies knowledge or information sufficient to form a belief with respect to the course of events in question. However, in its statement pursuant to Rule 9(g) of the General Rules of the Southern and Eastern Districts of New York the Creditors' Committee states that there are no genuine issues to be tried with respect to the following facts:

1. On March 7, 1980 TR–3 sold and delivered to the debtor 2,000 cases of auto cleaner and glaze having an agreed value of $50,137.50.

2. On June 23, 1980 TR–3 mailed and served a notice of reclamation of the goods upon the debtor.

3. On June 24, 1980 TR–3 caused a Telex to be served upon the debtor by Western Union demanding reclamation of the goods.

In its Rule 9(g) statement TR–3 denies selling the goods to the debtor on March 7, 1980 but admits delivering the goods on March 7th. In addition, TR–3 reasserts its allegations concerning the debtor's false representations as to its solvency at the time of the transaction.

Summary judgment is a procedural device which cuts off a party's right to trial, therefore the court must resolve all ambiguities in favor of the party which opposes a summary judgment motion, *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975). However, the reclamation aspect of this adversary proceeding is one which can be decided on the merits since there clearly exist no genuine issues of material fact which need to be tried. See *Schwartz v. Assoc. Musicians of Greater N.Y., Local 802*, 340 F.2d 228, 233 (2d Cir. 1964).

The issue to be resolved is whether or not TR–3 has a right to reclaim the goods from the debtor based upon the fact that it delivered the goods on March 7, 1980 and sought to reclaim them by written notice on June 23, 1980.

Section 546(c) of the Bankruptcy Code, 11 U.S.C. § 546(c), which deals with the reclamation rights of a seller, states in part:

"The rights and powers of the trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory right or common-law right of a seller, in the ordinary course of such seller's business, of goods to the debtor to reclaim such goods if the debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of goods before ten days after receipt of such goods by the debtor . . .".

The Creditors' Committee admits that Code § 546(c) recognizes the rights of a seller to reclaim either under common law principles or pursuant to U.C.C. § 2–702. However, the Committee argues that before reclamation may be allowed the conditions prescribed in subsection (1) of § 546(c) must be met, and since TR–3 did not make a written demand for reclamation within ten days of the receipt of the goods by the debtor, it is precluded from reclaiming the goods.

TR–3 argues that a careful reading of § 546(c) and its legislative history mandates the conclusion that a seller who has not complied with subsection (1) of § 546(c) is not barred from seeking reclamation pursuant to its common law rights since § 546(c) states that the rights and powers of a trustee are subject to any common-law rights of a seller. The plaintiff concedes, for the purposes of this motion, that § 2–702(2) of the Uniform Commercial Code is inapplicable to this controversy. A determination of whether or not U.C.C. § 2–702(2) precludes reliance on a common law right of reclamation under New York law is not required at this time since Code § 546(c) expressly permits the assertion of a common law right of reclamation in a bankruptcy proceeding.

Both the Second Circuit Court of Appeals and the New York State Court of Appeals have recognized a seller's right to reclaim goods sold on credit when the buyer fraudulently misrepresented his solvency, credit status, or intent to pay. See, *California Conserving Co. v. D'Avanzo*, 62 F.2d 528 (2d Cir. 1933); *In re Meiselman*, 105 F.2d 995 (2d Cir. 1939); *Hotchkin v. Third National Bank*, 127 N.Y. 329, 27 N.E. 1050 (1891); *Baldwin v. Childs*, 249 N.Y. 212, 163 N.E. 737 (1928). Therefore, the sole question to be determined by this court is whether TR–3 may reclaim the goods from the debtor, in spite of the fact that it did not comply with the requirements of Code § 546(c)(1).

In support of its argument TR–3 relies upon an article written by Professors Mann and Phillips appearing in The American Bankruptcy Law Journal; Mann, Phillips, *Section 546(c) of the Bankruptcy Reform Act: An Imperfect Resolution of the Conflict Between the Reclaiming Seller and the Bankruptcy Trustee*, 54 Am.Bankr.L.J. 239 (1980). TR–3 cites the article for the proposition that § 546(c) does not preclude a seller from reclaiming goods pursuant to a common law fraud claim, despite the fact that it did not demand reclamation in writing within ten days of the debtor's receipt of the goods. After a careful review of the Mann-Phillips article this court cannot agree with TR–3's interpretation of the author's conclusion.

The authors do not believe that § 546(c) is the exclusive bankruptcy provision governing a seller's reclamation rights but that a seller who does not comply with the requirements of § 546(c) would have the right to defend itself against the trustee's avoiding powers. 54 Am.Bankr.L.J., supra, at 265, 267. Notwithstanding the accuracy of this conclusion, TR–3's reliance upon it is misplaced. TR–3 is not seeking to override an avoiding power but is attempting instead to assert a nonbankruptcy cause of action, common law fraud, in a setting where its assertion is limited by the specific language of Code § 546(c). Indeed, Professors Mann and Phillips recognize this argument and state:

"[A] seller who is unable to utilize section 2–702(2) for [procedural reasons] will also usually be unable to employ section 546(c) in which case *the availability of common law fraud remedies will be of little avail also, because they too depend upon these requirements under section 546(c)*." [emphasis added]

54 Am.Bankr.L.J., supra, at 261 n.107. See, Schneyer, *Statutory Liens Under the New Bankruptcy Code—Some Problems Remain*, 55 Am.Bankr.L.J. 1 (1981). Further, the legislative history of Code § 546(c) states, "[A] demand for reclamation must be made in writing anytime before ten days after receipt of the goods by the debtor." 124 Cong.Rec. H. 11,097 (Sept. 28, 1978); S. 17,413–17,414 (Oct. 6, 1978). Therefore, it is clear that a seller who seeks to reclaim goods delivered to a debtor, whether relying upon U.C.C. § 2–702(2) or common law fraud, must comply with the requirements of Code § 546(c). TR–3's failure to give written notice of its demand for reclamation before ten days after receipt of the goods is fatal; it may not now prevail under its complaint seeking a turn over or surrender of these goods.

Accordingly, TR–3's cross-motion for summary judgment as to counts three and four of its complaint must be denied. Conversely, the debtor's motion for summary judgment on the same counts is granted

472

and that aspect of the complaint is dismissed.

SUBMIT order on notice.