**In re ATECO EQUIPMENT, INC., Debtor.**

**ATECO EQUIPMENT, INC., Plaintiff,**

**v.**

**COLUMBIA GAS OF PENNSYLVANIA and Thiele, Inc., Defendants.**

**Bankruptcy No. 81–2981.**
**Adv. No. 81–2208.**

United States Bankruptcy Court,
W. D. Pennsylvania.

March 31, 1982.

Sanford M. Lampl, Mary Anne McKeen, Pittsburgh, Pa., for debtor/plaintiff.

I. Samuel Kaminsky, Randy M. Wisnouse, Johnstown, Pa., for defendants.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

This case comes before the Court on a Complaint filed by the Debtor requesting the Defendants to show cause why Columbia Gas of Pennsylvania ("Columbia") should not be ordered to pay $20,584 to the Debtor for two trailer bodies that were delivered by the Debtor to Columbia. The allegations in the Complaint are that Thiele, Inc. ("Thiele") manufactured and sold to the Debtor on credit the trailer bodies and that Thiele is demanding direct payment for those trailer bodies from Columbia before it will deliver to Columbia the manufacturer's certificates of origin.

An Answer, Affirmative Defense and Counterclaim were filed by Thiele admitting that it has the certificates of origin, but alleging that its action was taken to protect its right to payment. Thiele further states that additional equipment and parts which it had manufactured were delivered to the Debtor prior to the bankruptcy filing and Thiele asserts a claim to that equipment.

A hearing was held on this matter on January 18, 1981. Subsequent to this hearing, the parties entered into a Stipulation as to part of this litigation. The Stipulation calls for the payment for the Columbia trailer bodies by Columbia to the Debtor and that Thiele's lien on those trailer bodies, if it is determined by this Court that Thiele has a lien, would attach to those monies. Thiele is to turn over the manufacturer's certificates of origin to Columbia. It has further been Stipulated that Thiele is entitled to an administrative expense of $3,788.00 with regard to the dump body at Thiele Invoice No. 46982 and of $97.13 with regard to the parts at Thiele Invoice Nos. 46996 and 46997. This Stipulation was approved by the Court on February 24, 1982.

## FINDINGS OF FACT

There is no dispute regarding the basic facts surrounding these transactions.

The Debtor filed its Petition in Bankruptcy asking for relief under Chapter 11 on November 4, 1981. Prior to the filing, the Debtor had purchased on credit from Thiele two trailer bodies at Thiele Invoice Nos. 46746 and 46857. These trailer bodies were delivered to the Debtor on October 14 and October 30, 1981. These trailer bodies are the Columbia trailer bodies.

The Debtor also purchased from Thiele on credit six dump bodies. These dump bodies were delivered to the Debtor as follows:

| Thiele Invoice No. | Delivered On |
| --- | --- |
| 46853 | 10/19/81 |
| 46856 | 10/20/81 |
| 46982 | 10/23/81 |
| 46948 | 10/29/81 |
| 46960 | 10/29/81 |
| 46982 | 11/2/81 |

In addition, the Debtor purchased parts from Thiele on credit at Thiele Invoice Nos. 46996 and 46997 and these were delivered to the Debtor on November 4, 1981.

Thiele sent a letter dated November 10, 1981, which was received by the Debtor on November 12, 1981. This letter was a demand for reclamation of goods at invoice Nos. 46853, 46856, 46894, 46948, 46960, 46982 and 46857, pursuant to the Uniform Commercial Code ("U.C.C.") and the Bankruptcy Code.

Thiele also introduced into evidence a Dun and Bradstreet Credit Report concerning the Debtor. The report was issued on September 29, 1981.

CONCLUSIONS OF LAW

Thiele presents several theories why it should be entitled to reclaim the goods that are in dispute.

Thiele contends that U.C.C. Section 2702(b) [13 Pa.C.S.A. § 2702(b)] applies in the case at hand. This section states:

> (b) Reclamation of goods on credit— Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand within ten days after the receipt, but if misrepresentation of solvency has been made to a particular seller in writing within three months before delivery the ten day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

The Bankruptcy Code at Section 546(c) states:

> (c) The rights and powers of the trustee under sections 544(a), 545, 547 and 549 of this title are subject to any statutory right or common law right of a seller, in the ordinary course of such seller's business, of goods to the debtor to reclaim such goods of the debtor has received such goods while insolvent, but—
>
> (1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods ten days after receipt of such goods by the debtor; and
>
> (2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court

> (A) grants the claim of such a seller priority as an administrative expense; or
>
> (B) secures such claim by a lien.

■ Thiele interprets this language to mean that U.C.C. Section 2702 is adopted in its entirety by the Bankruptcy Code.

In this case Thiele argues that the Dun and Bradstreet report was a fraudulent misrepresentation of solvency made within 90 days prior to the Bankruptcy filing on which Thiele relied to its detriment. Therefore, Thiele argues the ten-day notice period should not apply. The Court is of the opinion that the Dun and Bradstreet report was not a misrepresentation of solvency *made* by the Debtor, but since we find that Section 546(c) does not expand the rights of the reclaiming seller against the Trustee or Debtor in Possession to include all of U.C.C. Section 2702(b), we need not decide the factual issue.

Section 546(c) was adopted in an attempt to resolve the problems created by U.C.C. Section 2702. The adoption of Section 2702 resulted in a great amount of litigation between reclaiming sellers and trustees in bankruptcy under the Bankruptcy Act.

> Trustees claimed the right to reclamation was a statutory lien triggered by the debtor's insolvency and voidable by former Section 67(c)(1)(A); that it was a priority in conflict with former section 64; or that it was subordinate to the rights of a judicial lien creditor under former section 70(c). 4 *Collier on Bankruptcy*, 546–9 (15th Ed. 1981).

This lack of clarity produced inconsistent results. See generally Mann and Phillips, "Section 546(c) of the Bankruptcy Code: An Imperfect Resolution of the Conflict Between the Reclaiming Seller and the Bankruptcy Trustee," 54 Am.Bank.L.J. 239 (1980).

The plan of the new Bankruptcy Code gives the Trustee, pursuant to Section 544(a), the powers of a judicial lien creditor, an execution creditor and a bona fide purchaser; pursuant to Section 547 the power

to avoid preferential transfers; and pursuant to Section 549 the power to avoid post petition transfers. Given these powers, there is no question that the Trustee could assert title to the unsecured goods sold to the Debtor in this case. As stated in the legislative history, the purpose of Section 546(c) was:

> to recognize in part the validity of section 2–702 of the Uniform Commercial Code which has generated much litigation, confusion, and divergent decisions in different circuits. H.R.Rep.No.95–595, 95th Cong., 1st Sess. (1977); S.Rep.No.95–989, 95th Cong., 2nd Sess. 87 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5873, 6328.

Thus the drafters of the act intended to give to the reclaiming seller the limited right to reclaim only if he complied with the ten-day notice provision.

> Note, however, that the section does not give the seller everything that 2–702 does. In the first place it allows the seller to prevail only if he makes a written demand for reclamation within ten days after the goods are received. Thus it does not recognize the right of a seller to reclaim beyond the ten days when he has received a written misrepresentation of solvency within three months prior to the transfer. White and Summers *Uniform Commercial Code*, 1027 (2nd Edition, 1980).

In conclusion, we hold that Thiele cannot reclaim those goods which are in the Debtor's possession, which were delivered to the Debtor prior to ten days before November 12, 1981.

Thiele argues further with regard to the Columbia trailers that U.C.C. Section 2702(c) states that a reclaiming seller's right can be cut off by a good faith purchaser and that Columbia cannot be a good faith purchaser because it had knowledge of Thiele's interest in the trailers. Because our conclusion with regard to the meaning of Section 546(c) leads us to the conclusion that Thiele has no rights in the Columbia trailers, it is unnecessary to discuss this issue.

Thiele raises one last argument with regard to the Columbia trailers. This argument basically is that because the certificates or origin were never delivered to the Debtor, no sale of these vehicles could have taken place. Under the scheme of the Bankruptcy Code the Trustee who has possession of goods which are not properly secured has superior rights in those goods. The powers of the Trustee in this regard have been discussed above and in this Court's opinion in *In re Ateco Equipment, Inc.,* 17 B.R. 230 (B.C.W.D.Pa.1982) a case involving consignment sales. Section 2106(1) of the U.C.C. defines a sale as the passing of title to goods, but this section refers to U.C.C. Section 2401 for a definition of when passing of title occurs. Section 2404(1) and (2) state:

> (1) Identification of goods and reservation of title. Title to goods cannot pass under a contract for sale prior to their identification to the contract (section 2501), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this title. Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of Division 9 (relating to secured transactions), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

> (2) Place the delivery of goods. Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place, and in particular and despite any reservation of a security interest by the bill of lading:
> (i) if the contract requires or authorizes the seller to send the goods to the

buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but

(ii) if the contract requires delivery at destination, title passes on tender there.

Thus this section of the U.C.C. dovetails with the Bankruptcy Code in recognizing that the only way to reserve an interest in goods which have been transferred is to have a properly perfected security interest.

An appropriate Order will issue.