In the Matter of HOLIDAY MEAT PACKING INC., Debtor.

BOJALAD & COMPANY, Plaintiff,

v.

HOLIDAY MEAT PACKING INC., and Lester Breakstone, Trustee, Defendants.

BOJALAD AND COMPANY, Plaintiff,

v.

Lester BREAKSTONE, Trustee in Bankruptcy for Holiday Meat Packing, Inc., Defendant.

Bankruptcy No. 81–0030.
Adv. Nos. 81–0072, 81–0307.

United States Bankruptcy Court, W.D. Pennsylvania.

June 16, 1983.

Stephen J. Laidhold and Lampl, Sable & Makoroff, Pittsburgh, Pa., for plaintiff.

Vedder J. White and McClure, Dart, Miller, Kelleher & White, Erie, Pa., for trustee.

Robert G. Dwyer, and Knox, Graham, McLaughlin, Gornall & Sennett, Inc., Erie, Pa., for debtor.

## MEMORANDA AND ORDERS ON COMPLAINTS FOR RECLAMATION

WILLIAM B. WASHABAUGH, Jr., Bankruptcy Judge.

The within Chapter 11 case was filed by the debtor January 19, 1981, and prior thereto in September of 1980 the debtor ordered eight loads of denuded beef from the defendant to be shipped at the rate of two loads a month in September, October, November, and December, 1980 at an agreed price of $2.07 per pound. The September, October, and November shipments were made and paid for as agreed, but early in December the demand for the debtor's hamburger which it processed from the beef fell off, and its request for rescission or modification of the December shipment resulted in negotiations between the sales manager of the plaintiff and the debtor's vice president pursuant to which shipments were made December 8 and 26, 1980 totaling 79,200 pounds of denuded beef at the $2.07 price per pound for a total price of $163,844. It was agreed that the beef would be shipped to the debtor but it would

not be invoiced until February, 1981, when it was anticipated it would have more need for the product, and although the plaintiff's sales manager states it was understood the debtor held possession subject to his order, it was clear the debtor was obligated to pay for it at the contract price (June 26th transcript, pages 47, 48) and plaintiff sent the second shipment December 26th without getting paid for the first one sent December 6th (testimony June 26, 1981, page 31 et seq.). Whether the beef was held for the plaintiff under a warehousing bailment relationship or was the subject of a completed sale is the question before us in Count 1 of the Complaint at Adversary Proceeding No. 81–0072 seeking reclamation of said beef or the proceeds of its sale by the trustee for $69,463.00, some $94,471.00 less than the contract price of $163,944.

No filing was made to perfect a security interest in the shipped inventory, nor was there any written demand for its return within ten days of its delivery under the provisions of 11 U.S.C. § 546(c), nor was any oral demand made therefor at any other time until January 20, 1981, the day after the petition for relief under Chapter 11 of the Bankruptcy Code was filed when the plaintiff's sales manager went to the debtor's loading dock with a truck and asked for the return of the beef to him which on advice of counsel the debtor refused to permit (39, 40).

The plaintiff's witness testified that the denuded beef delivered as above was to be held in cold storage in its name, and it was consigned under the bills of lading issued to the carrier to "Bojalad and Company c/o Codan Cold Storage" at the debtor's address, 1109 Downing Avenue, Erie, Pennsylvania. Codan Company was the landlord-owner of the debtor's business premises at that address from whom the debtor rented them, but Codan operated no cold storage plant at the site in question and the only cold storage facilities at that location were those the debtor used almost exclusively in its meat processing business (67).

The testimony is uncontradicted that the beef was commingled with the debtor's business inventory and used at various times in its operations to the extent of 38,220 pounds of the 79,200 pounds shipped December 8 and 26, 1980, although in what appears to be an effort by the debtor to support the plaintiff's contention the goods were to be warehoused, its employees were instructed by the warehouse manager to reconstruct the loads to their original poundages from other inventory which they did, sometimes using chuck rather than denuded beef in the process (June 26, 1981 transcript, pages 132–134).

The testimony discloses that the debtor on some occasions did store items in cold storage for customers and issued warehouse receipts therefor, but that it issued a different series of lot numbers for these items than those assigned to its business inventory. No warehouse receipts with or without lot numbers were issued by the debtor or requested by the shipper for the subject denuded beef nor was any price or rate of compensation for cold storage or warehousing services requested or discussed between them. Lot numbers applicable to inventory used in the debtor's business rather than goods held for customers under warehouse receipts were assigned to the items and the trustee sold the 79,200 pounds of denuded beef for $69,463.00 under Stipulation approved by the Court at the then depreciated market price and holds said $69,463.00 sale proceeds in escrow for distribution under further Order of Court under said Stipulation.

As stated, the beef was not only commingled with other beef purchased by the debtor for use in its business of processing purchased beef to be converted into hamburgers by Burger King, but was so processed and sold to Burger King the extent of a substantial portion thereof before being reconstructed to the original poundages from other beef after the filing of the Chapter 11 petition as above (June 26, 1981, page 50, Plaintiff's Exhibits "B" and "D"). A warehouseman must keep separate at all times the goods covered by each receipt so as to permit their identifications and delivery at all times under 13 Pa.C.S.A. § 7207

and a purchaser of goods from a dealer therein takes good title thereto under 13 Pa.C.S.A. § 2403 (see also *Independent News Co., Inc. v. Harry Williams,* 293 F.2d 510 [3rd Cir.1961]), but no warehouse receipt or relationship is here involved under our conclusion that for the foregoing reasons the transaction declared upon in Count 1 of the Complaint in Adversary Proceeding No. 81–0072 resulted in a sale of the subject denuded beef at the contract price of $2.07 per pound agreed to in September, 1980 and consummated by the shipments totaling 79,-200 pounds thereof December 8 and 26, 1980, not a bailment or warehousing relationship. In our opinion all the plaintiff has is a general unsecured claim for the agreed sales price of $163,944.00 which is hereby allowed, and the prayer of the Complaint for reclamation of the denuded beef or its proceeds of sale of $69,443.00 is denied.

### COUNT 2 (Adversary Proceeding No. 81–0072)

In Count 2 of the plaintiff's complaint for turn over of property in Adversary Proceeding 81–0072, the disposition of the sum of $27,450.00 representing the value of 720 fifty-pound boxes of frozen, chopped beef with a net weight of 36,000 pounds is stated by plaintiff to involve the following issues: (1) Does the plaintiff have an administrative expense claim for the $27,450 sale price of said beef on the ground that it was delivered to the debtor-in-possession for use in the continuation of its business two-and-a-half hours before but nevertheless on the same day as the filing of its Chapter 11 petition, or a general unsecured claim for merchandise ordered by and delivered to the debtor before such filing? (2) Is the plaintiff entitled to recover for said chopped beef or its value under the provisions of Section 546(c) of the Bankruptcy Code providing for reclamation by a seller who makes a demand for return of delivered goods in writing within ten days of delivery?

■ 1. The fact that this item of chopped beef was received by the debtor September 19, 1981 at 11:00 a.m. prior to the filing of the Chapter 11 petition at 1:30 p.m. on said date is unequivocally established by the testimony of the debtor's employee, Sherry Fedorko, at page 5 of the testimony taken August 21, 1980 referring to Lot No. 2305 of defendant's Exhibit 7 on which she said at page 4 she entered said arrival date and time, and the testimony of employee, Janet Johnson, that she attempted to obtain a wire transfer to pay for the shipment after its arrival on said date at pages 143–145 of the June 26, 1981 transcript. The debtor's Vice-President who said at pages 40 and 41 of the June 26th testimony that the invoice date of January 21st was the date the meat was received is contradicted at pages 57–61 where he said the dates of the invoices were not always accurate, see especially page 58 where he denied any knowledge of the 720 boxes of chopped beef involved in Count 2 being in the debtor's plant January 20th as he was there on that date only to demand the return of the 1,320 cases of denuded beef involved in Count 1:

> "That's all I was concerned at that time was the thirteen hundred and twenty cases."

Title to the meat passed at the time and place of delivery under Section 2–401(2) of the Pennsylvania U.C.C., 13 Pa.C.A.S. § 2401(2) prior to the filing of the Petition and we have been neither cited to or able to find any authority for the plaintiff's argument that dates cannot be fractionalized in bankruptcy proceedings or that its claim must be treated as an administrative priority expense claim because the goods were delivered on the date of the filing two-and-a-half hours before the time thereof at 1:30 p.m.

■ (2) The debtor's original contention that an oral demand for return of inventory by its sales manager September 20, 1981 had any application to the 720 boxes of chopped beef involved in this Count of the Complaint is contradicted by said employee's testimony at page 58 of the June 26, 1981 transcript above quoted that the only goods he was endeavoring to recap-

ture on that date was the 1,320 cases of denuded beef involved in Count 1 hereof hereinabove discussed. Moreover, it has been consistently held that an oral demand within ten days for the return of sold goods does not satisfy the requirement of Section 546 that the demand be in writing: *In re Koro Corporation,* 20 B.R. 241 (Bkrtcy. 1st Cir.1982), *In re Original Auto Parts Distributors,* 9 B.R. 469 (Bkrtcy.S.D.N.Y.1981), and *In re Production Steel, Inc.,* 21 B.R. 951 (Bkrtcy.M.D.Tenn.1982). In addition, the perfected lien of the Marine Bank under its underlying security interest in the debtor's inventory as well as the rights of the debtor-in-possession and its successor trustee in bankruptcy as creditors with perfected liens as of the filing date of the petition are superior to any rights of the plaintiff as a seller of inventory with an unperfected secured claim under the law of Pennsylvania as codified in the above cited UCC sections and the principle that property rights are governed by state, not federal law: *Matter of Kravitz,* 278 F.2d 820 (3rd Cir.1960), (Goodrich, J.), *In re Ateco Equipment Co.,* 18 B.R. 917 (Bkrtcy.W.D.Pa.1982) in which counsel for plaintiff's firm successfully contended for the opposite of the proposition on which he now relies.

#### Adversary Proceeding 81–0307

■ The Plaintiff, Bojalad & Company, seeks in Adversary Proceeding No. 81–0307 to recover the proceeds of sale by the trustee of two shipments of beef to the debtor prior to the filing of its petition for relief under Chapter 11 of the Bankruptcy Code January 19, 1982: (1) 39,000 pounds of beef received by the debtor January 9, 1981 for an agreed purchase price of $47,946.60 and (2) 39,000 pounds of beef delivered January 12, 1980 for an agreed purchase price of $47,580.00. The seller made no written demand for return of the goods within ten days of either delivery as required by 11 U.S.C. § 546(c), but did go to the debtor's premises on January 20, 1981 and made oral demand for the return of the denuded beef involved in Adversary Proceeding No. 81–0072 Count 1. It is obvious that this demand was ineffective to perfect any rights in the plaintiff in either of the two shipments of beef involved in Adversary 81–0307 as (1) it was not made within ten days of the January 9, 1981 shipment; (2) the demand was for the cases of denuded beef involved in Adversary Proceeding 81–0072, Count 1, not these goods; and (3) it was not in writing as required by 11 U.S.C. § 546 under the authorities set forth in our discussion of Adversary Proceeding 81–0072, Count 2, supra.

IT IS ORDERED, ADJUDGED and DECREED that the prayers of the Plaintiff's Complaints in Adversary Proceeding No. 81–0072, Counts 1 and 2 and Adversary Proceeding 81–0307 be, and the same hereby are, denied for the reasons and under the authorities above set forth.*

---

* See also pages 8–11 and excerpts from pages 12 and 19 of defendant's brief hereby adopted as a supporting appendix to our disposition of Adversary Proceeding No. 81–0071 Count 1.