In re STORAGE TECHNOLOGY CORP., Debtor.

In re PIKE TOOL & GRINDING, Plaintiff,

v.

STORAGE TECHNOLOGY CORP., Defendant.

In re UNITED MACHINING, INC., Plaintiff,

v.

STORAGE TECHNOLOGY CORP., Defendant.

In re STYRO-MOLDERS CORP., Plaintiff,

v.

STORAGE TECHNOLOGY CORP., Defendant.

In re RBM PRECISION METAL PRODUCTS, Plaintiff,

v.

STORAGE TECHNOLOGY CORP., Defendant.

In re N.S. MACHINING, Plaintiff,

v.

STORAGE TECHNOLOGY CORP., Defendant.

In re MARKHON INDUSTRIES, INC., Plaintiff,

v.

STORAGE TECHNOLOGY CORP., Defendant.

In re ACDC ELECTRONICS, Plaintiff,

v.

STORAGE TECHNOLOGY CORP., Defendant.

In re SIEMENS, Plaintiff,

v.

STORAGE TECHNOLOGY CORP., Defendant.

In re APPLIED MAGNETICS CORP., Plaintiff,

v.

STORAGE TECHNOLOGY CORP., Defendant.

In re ARGUS, Plaintiff,

v.

STORAGE TECHNOLOGY
CORP., Defendant.

AMETEK, INC. and American Credit
Indemnity and Hadco Corp.,
Intervenors

v.

STORAGE TECHNOLOGY
CORPORATION.

Bankruptcy No. 84 B 05377 G.
Adv. Nos. 84 G 0945, 84 G 0953, 84 M 0963,
84 G 0971, 84 G 0978, 84 C 0999, 85 C
0014, 85 J 0026, 85 G 0119 and 85 C
0168.

Motion No. 1108 G 15.

United States District Court,
D. Colorado.

Date of Hearing April 2, 1985.

Decided April 29, 1985.

Ron Martin, Colorado Springs, Colo., for Pike Tool, Styro-Molders Corp., ACDC Electronics and Applied Magnetics Corp.

Robert Duitch, Colorado Springs, Colo., for RBM Precision Metal Products.

Leslie Kline, for United Machining, Inc.

Diana Paine, for N.S. Machining.

Paul Rubner, Denver, Colo., for Markhon Industries, Inc.

Amy Loper, Denver, Colo., for Siemens.

Norman Haglund, Denver, Colo., for Ametek.

George Webster, and Leslie Reed, Denver, Colo., for debtor.

Charles Tantelbaum and Alan Grouchel, for American Credit Indem. and Hadco Corp., intervenors.

Before McGRATH, CLARK and GUECK, Bankruptcy Judges.

FINDINGS OF FACT, CONCLUSIONS AND ORDER UPON DEFINITION OF INSOLVENCY UNDER 11 U.S.C. § 546(c)

■ The issue before this Court is whether the term "insolvent", as used in 11 U.S.C. § 546(c) refers to the bankruptcy definition found at 11 U.S.C. § 101(29), or the Uniform Commercial Code definition found at § 4-1-201(23), C.R.S. The practical effect of this decision is to determine whether a seller seeking to reclaim goods under § 546(c) must show "balance sheet" insolvency of the debtor, as defined in the Bankruptcy Code, or need show only "equitable" insolvency as allowed under the Uniform Commercial Code. For the reasons set forth below, we conclude that a reclaiming seller must show balance sheet insolvency as defined by the Bankruptcy Code.

The parties to this proceeding are the Debtor, Storage Technology Corporation (STC), and various reclaiming creditors (Creditors). All have agreed to submit the issue of the applicable definition of insolvency to this Court for determination prior to litigation of the complaints for reclamation.

Section 546(c) of the Bankruptcy Code provides as follows:

Except as provided in subsection (d) of this section, the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court—

(A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or

(B) secures such claim by a lien.

The relevant portion of section 101(29) provides:

"insolvent" means

(A) with reference to an entity other than a partnership, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—

(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and

(ii) property that may be exempted from property of the estate under section 522 of this title.

In contrast, the U.C.C. definition is:

a person is "insolvent" who either has ceased to pay his debts in the ordinary course of business or cannot pay his debts as they become due or is insolvent within the meaning of the federal bankruptcy law.

There is little authority to assist us in resolving the statutory construction issue now before the court. The United States Court of Appeals for the Third Circuit has noted that the enactment of § 546(c) adopted § 2-702(2) of the U.C.C. in part, but with modifications. In so doing, the Third Circuit observed, the drafters left some definitional loose ends which must now be resolved in the courts. *Matter of Marin Motor Oil, Inc.*, 740 F.2d 220 (3rd Cir.1984).

The court in *Marin, supra*, determined three unresolved definitions in § 546(c), but the definition of "insolvency" was not one

of them. There, the court did adopt the U.C.C. definition of "receipt" but only because that term was not defined in the Code. Therefore, the court concluded that Congress, in borrowing from the U.C.C., also intended to borrow the standard definition of "receipt" contained in the U.C.C. Other definitions were resolved by a review of policy and legislative history.

We are aware of two bankruptcy court decisions dealing, at least peripherally, with the definition of "insolvency," as it relates to reclamation. However, they appear to come to opposite conclusions.

The Bankruptcy Court for the District of Massachusetts concluded in *Furniture Distributors, Inc.*, 45 B.R. 38 (Bankr.Mass. 1984) that if one focuses on 11 U.S.C. § 546(c) and 101(29) [The reference in the decision to § 101(26) is now subsection (29) as a result of the Bankruptcy Amendments and Federal Judgeship Act of 1984.] there is no ambiguity. Accordingly, the court determined that no reclamation is permitted unless the debtor is shown to be insolvent as defined in the Code. However, the court in *Furniture Distributors* also found the issue of insolvency was not proved in either the Bankruptcy Code or the U.C.C. sense and, therefore, did not specifically issue a holding based on the Code definition.

In an unpublished opinion, issued in *International Crude Corporation*, Case No. 1–82–00085 in the Bankruptcy Court for the Northern District of Texas, it was held that "insolvency" as used in § 546(c) was intended to refer to the definition as contained in the Texas Business and Commerce Code, the Texas version of the Uniform Commercial Code, rather than the definition in the Bankruptcy Code. The court issued its ruling in the form of conclusions of law with no discussion and, therefore, we do not know the court's reasoning in reaching its conclusion. In any event, we are persuaded that the rules of statutory interpretation compel resolution in favor of the definition as contained in § 101(29), the "balance sheet" test.

It is a general principle of statutory construction that the statutory definitions control the meaning of words. *Lawson v. Suwanee Fruit & Steamship Co.*, 336 U.S. 198, 69 S.Ct. 503, 93 L.Ed. 611 (1949). Likewise, there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning. *Atlantic Cleaners & Dyers, Inc. v. U.S.*, 286 U.S. 427, 56 S.Ct. 607, 76 L.Ed. 1204 (1932). This presumption yields, however, when there is such a variation among the provisions in which a term is used as to warrant the conclusion that the same term was intended to have two or more different meanings within the same act. *Id.* In such a situation, it is appropriate to examine the legislative history of the act to determine what meaning was intended by Congress. *Lawson, supra; Bob Jones University v. U.S.*, 461 U.S. 574, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983).

However, where the language of a statute is clear, it must be followed. Court construction is only required where there is an ambiguity. *United States v. Yermian*, —— U.S. ——, 104 S.Ct. 2936, 82 L.Ed.2d 53 (1984); *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 101 S.Ct. 2142, 68 L.Ed.2d 612 (1981); *In re Furniture Distributors, Inc., supra.* It is rather fundamental that when the express language of a statute is clear, the court should not adopt a different construction, absent clear legislative intent to the contrary. *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *Consumer Product Safety Com'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980); *United States v. Holroyd*, 732 F.2d 1122 (2nd Cir. 1984).

The term "insolvent" is used throughout the Bankruptcy Code. It appears in a number of the provisions setting forth the avoiding powers of the trustee, §§ 545, 547, 548, and 553, and, of course, § 546. Courts have applied the definition found at § 101(29) in determining avoidability of transfers under §§ 547 and 548. *In re*

*Pereau,* 37 B.R. 902 (Bankr.M.D.Fla.1984); *In re Porter,* 37 B.R. 56 (Bankr.E.D.Va. 1984). Congress has specifically incorporated additional definitions for the term where it has deemed them appropriate. See, e.g., 11 U.S.C. §§ 109(c)(3); 303(h). The definition of "insolvent" found at § 101(29) is limiting, rather than inclusive. See, 11 U.S.C. § 102(3) and, e.g., 11 U.S.C. §§ 101(18), (28), (33). Thus, the structure of the Code indicates that the term "insolvent" is limited to the definition found at § 101(29), absent an express provision expanding that definition, in a particular code section.

The Creditors contend that other terms used in § 546(c) are defined by the U.C.C., such as "seller," "ordinary course of business," and "goods," and, therefore, the U.C.C. definition of "insolvent" should apply as well. The distinction overlooked by the Creditors is that the Bankruptcy Code does not provide a definition of those terms, while it does specifically define "insolvent". Thus, the analogy is inapposite.

While the structure of the Code speaks for itself, a review of the legislative history of § 546(c) adds further enlightenment. Prior to the enactment of the Code, no bankruptcy statute existed balancing the right of the trustee to avoid a transfer with the right of a seller to reclaim goods. Much litigation produced conflicting results. The purpose of the enactment of § 546(c) was to recognize, in part, the validity of § 2–702 of the Uniform Commercial Code, and to reduce confusion and litigation. S.Rep. No. 95–989, 95th Cong., 2d Sess. 86–87; *accord,* H.Rep. No. 95–595, 95th Cong., 1st Sess. 371–72 (1977), U.S. Code Cong. & Admin.News 1978, p. 5787. There is no express statement of Congressional intent that the U.C.C. definition of insolvency applies.

The Creditors contend, however, that § 546(c) refers to state law, either statutory or common, to define reclamation rights and that, therefore, the U.C.C. definition of those rights, adopted in all states except Louisiana, includes the U.C.C. definition of the term "insolvent." It is true that § 546(c) does not create reclamation rights; it merely refers to existing state and common law rights. Significantly, however, § 546(c) alters those rights in a number of ways.

Most obviously, § 546(c) requires that the reclamation demand be made in writing, while the U.C.C. allows an oral demand. Additionally, § 546(c) gives the court the right to substitute an administrative priority claim or a lien for the return of the reclaimed goods. There are also a number of more subtle variations. Section 546(c) requires that the sale be made in the ordinary course of the seller's business, a requirement not present in the U.C.C. Thus, bulk sales, sales by a non-merchant, and sales by a merchant which are unrelated to the merchant's basic line of business are reclaimable under the U.C.C., but not under the Bankruptcy Code. In addition, under the U.C.C., sellers need not comply with the 10-day demand requirement if they have received a written misrepresentation as to the debtor's solvency within 90 days prior to sale. Courts have almost unanimously ruled that the written demand is mandatory under § 546(c). See *In re Ateco Equipment, Inc.,* 18 B.R. 917 (Bankr.W.D.Pa.1982); *In re Contract Interiors, Inc.,* 14 B.R. 670 (Bankr.Mich.1981); *In re H.R.T. Industries, Inc.,* 29 B.R. 861 (Bankr.S.D.N.Y.1983); *In re Original Auto Parts Distributors,* 9 B.R. 469 (Bankr.S.D.N.Y.1981); *In re Koro Corp.,* 20 B.R. 241 (Bankr.App. 1st Cir.1982); *contra, In re A.G.S. Food Systems, Inc.,* 14 B.R. 27 (Bankr.S.C.1980). Finally, § 546(c) allows for recovery under common law, which is specifically excluded by the U.C.C. Thus, there are numerous differences between § 546(c) and U.C.C. § 2–702, and those differences are not limited to those expressly enumerated in § 546(c)(1) and (2). Clearly, Congress did not intend to adopt 2–702 wholesale; rather, it very carefully drafted § 546(c) to limit the rights of a reclaiming seller to fall within the special considerations of a bankruptcy proceeding.

The most compelling arguments made by the Creditors involve policy. They contend

that, in a normal commercial transaction, a seller is not concerned with a buyer's "balance sheet" solvency. Rather, the seller is concerned with whether the buyer is paying its debts as they come due. In addition, balance sheet insolvency is, in the usual case, much more difficult to prove than equitable insolvency. Thus, rather than reducing litigation, the application of the Bankruptcy Code definition to a reclamation proceeding may prolong and complicate the litigation. Finally, each state has developed case law determining the meaning of "insolvent" in resolving other disputes arising under § 2–702. The creditors contend that the creation of a federal bankruptcy standard will cause confusion, since different rules may apply within a single state, depending on whether the buyer has filed bankruptcy. To apply the state standards, on the other hand, would promote certainty within each state.

The first two objections are well-founded. "Balance sheet" insolvency is undoubtedly more difficult to prove than equitable insolvency, thus placing a heavy burden on reclaiming sellers. Additionally, complicated litigation will probably result. Unfortunately, the provisions of the Bankruptcy Code are clear, and this Court cannot alter them because of policy concerns. With regard to the issue of certainty, we do not anticipate there will be much variation now between the federal and state interpretations, as there is now little variation among the states, excluding, of course, the different definitions of insolvency. One federal standard will be created, applicable to all bankruptcy proceedings. Thus, there should be little reduction in certainty.

Finally, the Creditors raise the issue of exclusivity. They contend that, even if the requirements of § 546(c) are not met, they are not barred from proceeding with a reclamation suit. They argue that § 546(c) merely shields them from the trustee's avoiding powers. If they do not fall within its protection, they may proceed with their reclamation, subject to the trustee's power to avoid. See Mann and Phillips, "Section 546(c) of the Bankruptcy Code: An Imperfect Resolution of the Conflict Between the Reclaiming Seller and the Bankruptcy Trustee." 54 Am.Bankr.L.J. 239, 264–267 (1980). The Court cannot accept this argument.

Section 546(c) is a carefully crafted balance between the seller's right to reclaim goods and the trustee's right to avoid the reclamation. Should a seller fail to satisfy the requirements of § 546(c), to allow him to proceed under the state statutes will upset this balance and will lead to additional litigation and lack of certainty. Had Congress intended that § 546(c) be non-exclusive, it could have so provided. Since it did not, we must conclude that § 546(c) is the exclusive remedy for the seller.

For these reasons, this Court finds that the definition of insolvent found at 11 U.S.C. § 101(29) shall apply to a seller's reclamation rights under 11 U.S.C. § 546(c).