In re NEW YORK WHOLESALE DISTRIBUTORS CORP., a/k/a N.Y.W.D. Corp., N.Y. Dist. and N.Y.W. Dist., Debtor.

### DUKSEUNG OF AMERICA, INC., Plaintiff,

v.

### NEW YORK WHOLESALE DISTRIBUTORS CORP. and C.C. Hamilton & Co., Inc., Defendants.

Bankruptcy No. 84 B 11577 (PBA). Adv. No. 84–6278A.

United States Bankruptcy Court, S.D. New York.

March 12, 1986.

■

---

O'Melveny & Myers, New York City (Louis B. Kimmelman, of counsel), for plaintiff Dukseung of America, Inc.

Ballon, Stoll & Itzler, New York City (Ronald Itzler, of counsel), for defendant New York Wholesale Distributors Corp.

David Abramowitz, New York City, for defendant C.C. Hamilton & Co., Inc.

### DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PRUDENCE B. ABRAM, Bankruptcy Judge:

The court is presented with a motion for summary judgment by defendant New York Wholesale Distributors Corp. ("NYWD"). NYWD's motion must be denied because there exist issues of material fact in dispute that preclude the entry of summary judgment and require a trial on the merits.

On November 21, 1984, Dukseung of America, Inc. ("Dukseung") commenced this adversary proceeding against NYWD and C.C. Hamilton & Co., Inc. ("Hamilton") seeking, *inter alia,* reclamation of a large quantity of shirts (the "goods"),[1] pursuant to Bankruptcy Code § 546(c) and New York Uniform Commercial Code § 2–702(2). The goods Dukseung seeks to reclaim were ordered on or about October 6, 1984 and delivered to NYWD during late October of 1984. By way of alternative relief, Dukseung seeks either an administrative priority for its claim based on the value of the goods, a lien on the goods and the proceeds thereof, or damages for conversion, with the proceeds of the goods deemed to be held by the debtor in constructive trust for Dukseung. Defendant Hamilton, a commercial warehouse company engaged in the business of storing merchandise, stored the goods for Dukseung prior to their delivery

---

1. The court notes that Dukseung alleges that NYWD had ordered 2,337 dozen men's shirts, whereas NYWD maintains that only 1,775 dozen shirts had been ordered.

to NYWD, and for NYWD after their delivery to NYWD.[2] In addition to its dual role in the NYWD-Dukseung transaction, Hamilton had long-term business relationships with both its co-defendant and the plaintiff, having served as a warehouse for NYWD and Dukseung in prior transactions unrelated to the goods at issue herein.

The accuracy of the numerous non-negotiable warehouse receipts issued by Hamilton poses the major bone of contention between Dukseung and NYWD.[3] NYWD contends that the dates entered on the warehouse receipts are dispositive on the issue of the dates the goods were delivered to NYWD, while both Hamilton and Dukseung allege that those dates were erroneous and thus fail to reflect accurately the dates the goods were delivered to NYWD. NYWD maintains that six of these warehouse receipts were issued and delivered to it on October 22, 1984, seven were issued and delivered to it on October 25, 1984, and one was issued and delivered to it on October 30, 1984. Hamilton agrees that it issued six of the warehouse receipts on October 22, 1984, but claims that it issued the remainder on October 30, 1984. Hamilton further claims that its entry of the October 25 date on seven of the warehouse receipts was a clerical error, because Dukseung's order to transfer the goods referred to in those receipts had not in fact even received by Hamilton until October 30, 1984. Dukseung denies that any of the warehouse receipts were issued by Hamilton or delivered to NYWD on either October 22 or October 25, but rather claims that all warehouse receipts were issued on or after October 30, 1984.[4]

At some point after October 30, 1984, Dukseung received information which led it to conclude that NYWD was insolvent. By letter dated November 9, 1984, Dukseung sent NYWD a demand for reclamation of the goods. On November 13, 1984, NYWD filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. It thus appears that Hamilton's reclamation demand was made and received by NYWD prior to the filing of the NYWD bankruptcy petition although no reclamation had been accomplished by that time.

NYWD has conceded that the goods were still in their possession at the time the demand for reclamation was received. However, following NYWD's receipt of the demand, a portion of the goods were released to NYWD's customers as per its order to Hamilton on or about November 19, 1984. By stipulation dated November 28, 1984, the parties agreed that NYWD was authorized to sell the goods then remaining in its possession and Dukseung was granted a lien on all remaining goods and the proceeds thereof up to the amount of $144,636.00 pending a determination of the instant adversary proceeding.

The rights of a reclaiming seller of goods

---

**2.** A portion of the goods were in the warehouse, being held for Dukseung's account, at the time NYWD agreed to purchase the goods from Dukseung. The remainder of the goods were shipped by Dukseung to Hamilton in late October 1984. At some point in October, the precise date being disputed by the parties, the goods held by Hamilton were transferred from Dukseung's account to NYWD's account.

**3.** Warehouse receipts constitute the means by which Hamilton acknowledges receipt of a quantity of goods, or a transfer of goods already in its possession. Hamilton alleges that the issuance and delivery of warehouse receipts is the only method it utilizes to acknowledge to a transferee that goods are being held for that transferee's account.

**4.** In addition, the parties dispute the dates upon which Dukseung directed Hamilton to transfer the goods to NYWD and the periods for which NYWD and Dukseung had been billed for storage at the Hamilton warehouse. NYWD has submitted a billing statement received from Hamilton in which NYWD was billed for storage charges on various portions of the goods from October 22nd and October 25th. Dukseung nevertheless maintains that the bill NYWD refers to, prepared some two months after the fact, was erroneous, and that Dukseung had in fact been billed for warehouse storage of the goods for the entire month of October. Consistent with its other allegations, Hamilton states that the October 25th date on the storage bill is in error because it was based on the erroneous October 25th date on the warehouse receipts.

in the bankruptcy context[5] are expressly dealt with by Bankruptcy Code § 546(c), which provides, in pertinent part, that:

"[T]he rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor ..."

Thus, the conditions imposed by Code § 546(c) on a seller who seeks to recover goods sold and delivered to a debtor may be briefly summarized as follows: (1) the seller has a statutory or common law right to reclaim the goods; (2) the debtor received the goods while insolvent; and (3) the seller makes a written demand for reclamation of the goods within ten days of receipt of the goods by the debtor. In addition, the courts have consistently required that the goods still be in the debtor's possession at the time the demand for reclamation is received. *See In re Flagstaff Corporation (McCain Foods, Inc. v. Flagstaff Foodservice Company New England, Inc.)*, 14 B.R. 462 (Bankr.S.D.N.Y.

1981). For a general discussion of the rights of a reclaiming seller in bankruptcy proceedings, *see In re Flagstaff Foodservice Corporation*, 14 B.R. at 464–469. *See also In re Marin Motor Oil, Inc. (Montello Oil Corporation v. Marin Motor Oil, Inc.)*, 740 F.2d 220 (3d Cir.1984); *In re HRT Industries*, 29 B.R. 861 (Bankr.S.D.N.Y.1983); *In re Deephouse Equipment Co.*, 22 B.R. 255 (Bankr.D.Conn.1982); *In re Koro Corp.*, 20 B.R. 241 (Bankr.App.Pan. 1st Cir.1983); *In re Ateco Equipment, Inc.*, 18 B.R. 917 (Bankr.W.D.Pa.1982); *In re Contract Interiors, Inc.*, 14 B.R. 670 (Bankr.E.D.Mich.1981); *In re Original Auto Parts Distributors, Inc.*, 9 B.R. 469 (Bankr.S.D.N.Y.1981).

Thus in order to obtain the reclamation of goods it seeks, Dukseung's demand for reclamation must have been made within ten days after the goods were delivered to NYWD.[6] Therefore a precise determination of when NYWD received the goods is central to the outcome of this adversary proceeding.

Summary judgment is appropriate only when there is no genuine "issue as to any material fact and the moving party is entitled to judgment as a matter of law." *In the Matter of Iota Industries, Inc.*, 35 B.R. 693, 695 (Bankr.S.D.N.Y.1983); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.3d 438, 444 (2d Cir.1980); *Grand Union*

---

5. The court notes that Dukseung's cause of action herein was complete prior to the filing of the NYWD Chapter 11 petition in that no post-petition events were involved in creating Dukseung's right of action for reclamation. Thus, in this instance Bankruptcy Code § 546(c) serves to validate Dukseung's state law right of action for reclamation under N.Y.U.C.C. § 2–702(2), which provides that:

"Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten-day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay."

In light of the pre-petition nature of Dukseung's demand, because the demand meets the Bankruptcy Code requirement that reclamation demands be in writing, and because the U.C.C. and the Bankruptcy Code both require that demands for reclamation be made within ten days of receipt of the goods by the buyer and that the goods were in the buyer's possession when the demand was received, the court is of the view that the differences between Code § 546(c) and U.C.C. § 2–702(2) are of no moment to the issues raised herein.

6. Uniform Commercial Code § 2–702 provides a statutory right of reclamation, thereby satisfying the first condition noted above. The parties have conceded that NYWD was insolvent at the time the goods were delivered and that the goods were still in NYWD's possession at the time the demand for reclamation was received. Thus the court need not further address these issues.

*Co. v. Cord Meyer Development Corp.,* 735 F.2d 714, 717 (2d Cir.1984); *Federal Rules of Civil Procedure* 56(c). The party seeking the grant of summary judgment has the burden of demonstrating "the absence of any material factual issue genuinely in dispute." *In re Tampa Chain, Inc.,* 35 B.R. 568, 573 (Bankr.S.D.N.Y. 1983). *See also United States v. One Tintoretto Painting,* 691 F.2d 603, 606 (2d Cir.1982); *Quinn v. Syracuse Model Neighborhood Corp., supra; Hayden Publishing Co. v. Cox Broadcasting Co.,* 730 F.2d 64, 68 (2d Cir.1984); *Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1320 (2d Cir.1975). In determining whether to grant a summary judgment motion the court "must resolve all doubts in favor of the party opposing the motion." *In the Matter of Iota Industries, Inc.,* 35 B.R. at 695. *See also Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983). The court's function with respect to the motion for summary judgment is not to try issues of fact but rather to determine "whether there are issues of facts that need to be tried." *Schering Corp. v. Home Insurance Company,* 712 F.2d 4, 9 (2d Cir.1983), quoting *Heyman v. Commerce and Industry Co.,* 524 F.2d 1317, 1320 (2d Cir.1975); *see also Katz v. Goodyear Tire and Rubber Co.,* 737 F.2d 238, 244 (2d Cir.1984); *In the Matter of Iota Industries, Inc., supra.* In a summary judgment motion the "key is issue-finding, not issue-resolution." *United States v. One Tintoretto Painting,* 691 F.2d at 606.

■ Based on the pleadings, affidavits and Rule 3–g statements submitted by the parties, the court cannot find that NYWD is entitled to judgment as a matter of law. It is clear that there exist disputed issues of fact concerning the date the goods were delivered to NYWD. In alleging that Dukseung's demand was untimely, NYWD places its exclusive reliance on the dates of issuance entered on the warehouse receipts. However, both Dukseung and Hamilton aver that those dates do not accurately reflect either the dates of issuance or the dates upon which the goods were delivered to NYWD, and thus urge that the warehouse receipts are seriously misleading regarding the dates upon which NYWD received the goods. Moreover, NYWD has not addressed the admissibility of evidence regarding the accuracy of the dates entered on the warehouse receipts.

■ The court is of the view that it need not accept the dates of issuance entered on the warehouse receipts as conclusive regarding of the dates upon which the goods were delivered to NYWD, but rather that the court may accept parol evidence regarding the accuracy of those dates and possible clerical error on the part of Hamilton. Although the date of issuance is an essential term of a warehouse receipt, N.Y. U.C.C. § 7–202(2)(b), it is part of the "receipt clause" which may be contradicted by parol evidence, as opposed to constituting part of the "contractual terms" which are generally conclusive and may not be contradicted by parol or other extrinsic evidence. *See* 45 N.Y.Jur.2d *Documents of Title* §§ 4, 50.

Therefore, in the absence of being directed to controlling legal authorities mandating otherwise, the court declines to find as a matter of law that the warehouse receipts conclusively establish the dates upon which the goods were delivered to NYWD or that Dukseung cannot introduce parol or other extrinsic evidence regarding said delivery dates. It is therefore apparent that there exist material issues of fact that can be resolved only by a trial on the merits, and this court cannot grant summary judgment.

Accordingly, for all the reasons set forth herein, defendant NYWD's motion for summary judgment will be, and it hereby is, denied.

It is so ordered.