In re DYNAMIC TECHNOLOGIES
CORPORATION, Debtor.

CHEMICAL–WAYS
CORPORATION, Plaintiff,

v.

Kathryn PAGE, Trustee of Dynamic
Technologies Corporation,
Defendant.

HALES MACHINE TOOL,
INC., Plaintiff,

v.

BANKRUPTCY ESTATE OF DYNAMIC
TECHNOLOGIES CORP., Kathryn
Page as Trustee of the Bankruptcy Es-
tate of Dynamic Technologies Corp.,
and Dynamic Technologies Corp., De-
fendant.

DAVID T. OLSON SALES CO.,
INC., Plaintiff,

v.

BANKRUPTCY ESTATE OF DYNAMIC
TECHNOLOGIES CORP., Kathryn
Page as Trustee of the Bankruptcy Es-
tate of Dynamic Technologies Corp.,
and Dynamic Technologies Corp., De-
fendant.

AMERICAN PHOTOCOPY EQUIPMENT
COMPANY OF MINNEAPOLIS, INC.,
Plaintiff,

v.

BANKRUPTCY ESTATE OF DYNAMIC
TECHNOLOGIES CORP., Kathryn
Page as Trustee of the Bankruptcy Es-
tate of Dynamic Technologies Corp.,
and Dynamic Technologies Corp., De-
fendant.

TECHNICAL MARKETING CO.,
INC., Plaintiff,

v.

BANKRUPTCY ESTATE OF DYNAMIC
TECHNOLOGIES CORP., Kathryn
Page as Trustee of the Bankruptcy Es-

tate of Dynamic Technologies Corp.,
and Dynamic Technologies Corp., De-
fendant.

INTERMATIC
INCORPORATED, Plaintiff,

v.

BANKRUPTCY ESTATE OF DYNAMIC
TECHNOLOGIES CORP., Kathryn
Page as Trustee of the Bankruptcy Es-
tate of Dynamic Technologies Corp.,
and Dynamic Technologies Corp., De-
fendant.

ZELLERBACH PAPER CO., Plaintiff,

v.

BANKRUPTCY ESTATE OF DYNAMIC
TECHNOLOGIES CORP., Kathryn
Page as Trustee of the Bankruptcy Es-
tate of Dynamic Technologies Corp.,
and Dynamic Technologies Corp., De-
fendant.

AL MAC PLASTICS, INC., Plaintiff,

v.

BANKRUPTCY ESTATE OF DYNAMIC
TECHNOLOGIES CORP., Kathryn
Page as Trustee of the Bankruptcy Es-
tate of Dynamic Technologies Corp.,
and Dynamic Technologies Corp., De-
fendant.

ELECTRIC MOTOR REPAIR,
INC., Plaintiff,

v.

BANKRUPTCY ESTATE OF DYNAMIC
TECHNOLOGIES CORP., Kathryn
Page as Trustee of the Bankruptcy Es-
tate of Dynamic Technologies Corp.,
and Dynamic Technologies Corp., De-
fendant.

CLIMAX METAL
PRODUCTS, Plaintiff,

v.

BANKRUPTCY ESTATE OF DYNAMIC
TECHNOLOGIES CORP., Kathryn
Page as Trustee of the Bankruptcy Es-

tate of Dynamic Technologies Corp., and Dynamic Technologies Corp., Defendant.

JM OFFICE PRODUCTS,
INC., Plaintiff,

v.

BANKRUPTCY ESTATE OF DYNAMIC TECHNOLOGIES CORP., Kathryn Page as Trustee of the Bankruptcy Estate of Dynamic Technologies Corp., and Dynamic Technologies Corp., Defendant.

HARRIS MACHINERY CO., Plaintiff,

v.

BANKRUPTCY ESTATE OF DYNAMIC TECHNOLOGIES CORP., Kathryn Page as Trustee of the Bankruptcy Estate of Dynamic Technologies Corp., and Dynamic Technologies Corp., Defendant.

MID–CO. TV SYSTEMS, INC., Plaintiff,

v.

BANKRUPTCY ESTATE OF DYNAMIC TECHNOLOGIES CORP., Kathryn Page as Trustee of the Bankruptcy Estate of Dynamic Technologies Corp., and Dynamic Technologies Corp., Defendant.

CLAYHILL, INC., Plaintiff,

v.

BANKRUPTCY ESTATE OF DYNAMIC TECHNOLOGIES CORP., Kathryn Page as Trustee of the Bankruptcy Estate of Dynamic Technologies Corp., and Dynamic Technologies Corp., Defendant.

G & C SALES AND
SERVICE, Plaintiff,

v.

BANKRUPTCY ESTATE OF DYNAMIC TECHNOLOGIES CORP., Kathryn Page as Trustee of the Bankruptcy Es-

tate of Dynamic Technologies Corp., and Dynamic Technologies Corp., Defendant.

MARATHON ELECTRIC,
INC., Plaintiff,

v.

BANKRUPTCY ESTATE OF DYNAMIC TECHNOLOGIES CORP., Kathryn Page as Trustee of the Bankruptcy Estate of Dynamic Technologies Corp., and Dynamic Technologies Corp., Defendant.

AST BEARINGS DIVISION OF VERNI-TRON CORPORATION, Plaintiff,

v.

BANKRUPTCY ESTATE OF DYNAMIC TECHNOLOGIES CORP., Kathryn Page as Trustee of the Bankruptcy Estate of Dynamic Technologies Corp., and Dynamic Technologies Corp., Defendant.

MINNESOTA SUPPLY
COMPANY, Plaintiff,

v.

BANKRUPTCY ESTATE OF DYNAMIC TECHNOLOGIES CORP., Kathryn Page as Trustee of the Bankruptcy Estate of Dynamic Technologies Corp., and Dynamic Technologies Corp., Defendant.

LORS MACHINERY, INC., Plaintiff,

v.

BANKRUPTCY ESTATE OF DYNAMIC TECHNOLOGIES CORP., Kathryn Page as Trustee of the Bankruptcy Estate of Dynamic Technologies Corp., and Dynamic Technologies Corp., Defendant.

CLARKLIFT OF MINNESOTA,
INC., Plaintiff,

v.

BANKRUPTCY ESTATE OF DYNAMIC TECHNOLOGIES CORP., Kathryn Page as Trustee of the Bankruptcy Es-

tate of Dynamic Technologies Corp., and Dynamic Technologies Corp., Defendant.

CENTURY ELECTRIC CO., INC., a Delaware Corporation, Plaintiff,

v.

BANKRUPTCY ESTATE OF DYNAMIC TECHNOLOGIES CORP., Kathryn Page as Trustee of the Bankruptcy Estate of Dynamic Technologies Corp., and Dynamic Technologies Corp., Defendant.

PITNEY BOWES, Plaintiff,

v.

BANKRUPTCY ESTATE OF DYNAMIC TECHNOLOGIES CORP., Kathryn Page as Trustee of the Bankruptcy Estate of Dynamic Technologies Corp., and Dynamic Technologies Corp., Defendant.

APPLIED POWER PRODUCTS, INC., Plaintiff,

v.

BANKRUPTCY ESTATE OF DYNAMIC TECHNOLOGIES CORP., Kathryn Page as Trustee of the Bankruptcy Estate of Dynamic Technologies Corp., and Dynamic Technologies Corp., Defendant.

ROBIN INDUSTRIAL SUPPLY, INC., Plaintiff,

v.

BANKRUPTCY ESTATE OF DYNAMIC TECHNOLOGIES CORP., Kathryn Page as Trustee of the Bankruptcy Estate of Dynamic Technologies Corp., and Dynamic Technologies Corp., Defendant.

Bankruptcy No. 4–89–1604.
Adv. Nos. 4–89–161, 4–89–203, 4–89–204, 4–89–242, 4–89–320 to 4–89–330, 4–89–339 to 4–89–342, 4–89–365, 4–89–383, 4–89–387, 4–89–389 and 4–89–392.

United States Bankruptcy Court, D. Minnesota.

Oct. 20, 1989.

Kathryn Page, Wagner, Johnston & Falconer, Minneapolis, Minn., for defendant.

Jeffrey C. Robbins, Mahoney, Walling & Kelly, Minneapolis, Minn., for plaintiff Chemical–Ways Corp.

John R. Kaufhold, Peterson, Engberg & Peterson, Minneapolis, Minn., for plaintiffs Hales Mach. Tool, Inc. and David T. Olson Sales Co., Inc.

Claude M. Loewenthal, Claude M. Loewenthal & Associates, Ltd., Minneapolis, Minn., for plaintiff American Photocopy Equipment Co. of Mpls., Inc.

William G. Cottrell, John A. Halpern & Associate, Minneapolis, Minn., for Technical Marketing Co., Inc., Intermatic Inc., Zellerback Paper Co., Al Mac Plastics, Inc., Electric Motor Repair, Inc., Climax Metal Products, JM Office Products, Inc., Harris Machinery Co., Mid–Co. TV Systems, Inc., Clayhill Inc., G & C Sales and Service, Marathon Elec., Inc., AST Bearings Div. of Vernitron Corp., Minnesota Supply Co., and Lors Machinery, Inc.

Ralph V. Mitchell, Robins, Kaplan, Miller & Ciresi, Minneapolis, Minn., for plaintiff Clarklift of Minnesota, Inc.

Jerome D. Ciresi, St. Paul, Minn., for plaintiff Century Elec. Co., Inc.

Alan I. Silver, Doherty, Rumble & Butler, Minneapolis, Minn., for plaintiff Pitney Bowes.

Michael J. Minenko, Johnson & Madigan, Minneapolis, Minn., for plaintiff Applied Power Products, Inc.

Jay A.H. Joyner, Rosenthal, Rondoni, MacMillan & Joyner, Minneapolis, Minn., for plaintiff Robin Industrial Supply, Inc.

## MEMORANDUM OPINION AND FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR SUMMARY JUDGMENT

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matters came on for hearing on motions for summary judgment filed by the defendant, Kathryn Page, trustee of the Estate of Dynamic Technologies. This Court has jurisdiction to hear and finally determine this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 103. This is a core proceeding.

### FACTS [1]

The issue in these adversary proceedings is whether the twenty-four plaintiffs, all of whom are unsecured creditors, should be allowed to improve their position over debtor's nearly 250 other unsecured creditors similarly situated.

Debtor was engaged in the business of manufacturing paint mixing equipment.[2] Its primary shareholder, President, and Chief Executive Officer was Donald Carlson. In 1988, debtor had at least one major contract with the federal government. Pursuant to that contract, debtor supplied the government with specially manufac-

---

1. To some extent recitation of the facts is made difficult because the former CEO and primary shareholder of the involuntary debtor, Donald Carlson, has asserted his Fifth Amendment rights in this case. But there is adequate documentary evidence to support the following statement of undisputed facts.

2. While plaintiffs *assert* that Dynamic Technologies was a sham, they provide absolutely no competent evidence to support that position. The Court's recitation of these facts is based on unrebutted documentary evidence that debtor was, in fact, in business.

tured paint mixing equipment. The contract was in the total amount of $613,021. Debtor successfully completed that contract and was paid for its work pursuant to at least three requests for payment it made in July, August, and September of 1988. During this period, debtor employed at least three people. The rest of its labor force was contract labor furnished to it by Opportunity Workshop, a group which hires, trains and makes handicapped workers available as contract laborers.[3]

In the fall of 1988, debtor began negotiations for another large contract with the federal government. On September 19, 1988, the General Services Administration ("GSA") issued its solicitation for a negotiated bid from debtor for the manufacture of spray paint mixers. The solicitation was for acceptance within 60 days. On October 19, 1988, debtor submitted its offer in response thereto. On February 14, 1989, GSA accepted the offer as it had been amended on December 1, 1988 and January 14, 1989. The acceptance indicated that the contract was effective April 1, 1989 and was for the period of April 1, 1989 through March 31, 1992. While the documentation submitted is not sufficiently detailed to establish this with precision, it appears that the contract was for an indefinite number of paint mixers. It was definitely a four year contract. At or about the same time, debtor was also negotiating for another federal contract with the Defense Logistics Agency.

Beginning sometime in late 1988, debtor placed a large number of orders for goods with a large number of vendors. Some of these items were standard items, but many of them were specialty items suitable for use in the manufacture of paint mixers. It also purchased office equipment and computers. Included in the purchases were large volumes of expensive plastic sheeting, drill presses, pallets, forklifts, security fencing, approximately 12,000 small mo-

tors, and a considerable variety of materials handling equipment.

When prospective vendors, all of whom sold on an unsecured basis, would ask for credit references, debtor provided them with a letter from its bank, the National City Bank at Ridgedale, in which a bank officer stated that debtor had been a customer since June, 1988, had a savings and a checking account with the Bank, and that the current balance in the checking account was $250,000. The debtor also supplied prospective vendors with a short list of credit references. There is no evidence to suggest that the letter from National City Bank was in any way inaccurate or untrue at the time it was issued. Nor have the plaintiffs been able to present any evidence to suggest that the list of references was inaccurate.

The plaintiffs and many other vendors shipped approximately $5,000,000 in products to the debtor during the first several months, of 1989. There is evidence that some vendors asked for, and were promised, but never received, UCC–1 forms. None of the plaintiffs obtained a UCC–1 form to preserve its purchase money interest in the goods. None of them, with one possible exception, made demand for return of its goods within 10 days of delivery to the debtor.

Plaintiffs have submitted two affidavits in which the affiants state that they are suppliers of some of the types of products being purchased. The affiants state that, in their judgment, the quantities of product ordered by debtor were excessive for any reasonable manufacturing operation. For example, a motor supplier has stated that "it is inconceivable for any paint shaking manufacturer to order 18,000 electric motors"[4] and that, "based on the market for paint shakers, this number of electric motors would represent a 5–10 year supply," while "the shelf life for an electric motor

---

3. Much has been made by the plaintiffs of the fact that at times Dynamic Technologies did not seem to have employees at its facilities. It has also been argued that the space occupied by Dynamic Technologies in Watertown, South Dakota was not large enough to use as a manufac-

turing plant. Manufacturers with cyclical business commonly use subcontract labor. It's cheap and flexible, and it cuts down on their need for facilities space.

4. Debtor probably only ordered 12,000 motors.

and bearings is normally only 2 years." This affiant further swears that having viewed some of the product when it was auctioned by the trustee, "it appeared they (Dynamic Technologies) had done the same thing to other creditors as they did to electric motor manufacturers. That is to say, it appeared they obtained the same massive quantity of merchandise by ordering the same types of merchandise from numerous different vendors." Another supplier averred that debtor ordered from several different manufacturers pallet racking, which purchase the supplier, in his experience, believed to be unusual, since interchangeable materials handling equipment would have functioned more efficiently. Neither of the affiants, however, suggests that he was aware that the debtor recently had obtained a four year contract for the supply of paint mixers to GSA. In light of this, the value of their conclusory statements and opinions is doubtful.

In 1988, debtor had a manufacturing facility and office location in Plymouth, Minnesota. During this same year, however, it also began to explore the possibility of relocating the manufacturing portion of the business to a non-urban area. The purpose of the move was to reduce costs of production. Debtor selected a location in Watertown, South Dakota, and secured a 22,000 square foot facility there by early spring of 1989. The lease for that space was executed by the National Bank in Brookings and Watertown Mixer Leasing Corporation ("Watertown") on December 28, 1988. Watertown, a corporation chartered in South Dakota, had apparently been formed by Donald Carlson, the primary shareholder of Dynamic Technologies. The lease was for an initial term of 10 months, with Watertown having options to renew until 1990. Watertown had the right to obtain possession for purposes of clean-up beginning December 28, 1988, and to occu-py the premises as tenant beginning February 1, 1989.

Approximately 25% of the products received by the debtor from the various vendors was shipped to the Plymouth location. According to an unrebutted affidavit submitted by the debtor, the goods were drop shipped to Plymouth whenever there was less than a truckload delivery, because it was cheaper to receive the goods in Plymouth and then truck them to Watertown later. Approximately 75% of the products ordered were shipped directly to the newly-opened Watertown location.

On April 6, 1989, debtor's Minneapolis counsel mailed a letter to the company's creditors. The letter advised the creditors that, as of April 6, 1989, the company had ceased doing business at both its Minnesota and South Dakota locations and had filed a notice of intent to dissolve with the Secretary of State of Minnesota. He further advised that the corporation was in the process of dissolving under Minn.Stat. § 302A.721. Under such a dissolution process he advised "the Corporation and all of its assets will be liquidated and proceeds distributed to creditors." The letter enclosed a claim form for return, and promised a pro-rata payment within 90 days.

This letter set off panic among a number of the vendors who had recently shipped product. Some of them went to debtor's facilities and began to physically take back their goods. The fact that debtor had ceased operations came to the attention of the Plymouth, Minnesota Police Department, which conducted an investigation regarding a possible "theft by trick" charge. The Plymouth Police Department eventually turned the results of its investigation over to the FBI. The FBI may or may not be conducting an investigation. No criminal charges have ever come of these investigations.[5]

---

5. Plaintiffs have supplied the Court with a deposition of the Plymouth Police Officer who conducted the investigation. Appended to that deposition is the officer's investigation report. The deposition and the investigation report are filled with inadmissible hearsay, some of it second and third hand. None of the statements taken from persons, other than the deposition of the officer, are under oath. In reaching my decision I have ignored the officer's deposition and the exhibits thereto.

The report, however, actually makes the trustee's case with respect to whether Dynamic Technologies was ever in business. Many of the witnesses the officer interviewed were former employees of debtor. Their statements are con-

When several of the creditors learned that other creditors were rummaging through debtor's facilities and taking back their products, an involuntary petition was filed on April 10, 1989. On April 12, 1989, at the emergency request of the petitioning creditors, I ordered the appointment of an interim trustee, who has now been named as the defendant in these proceedings. Debtor has not answered the petition and, accordingly, an Order for Relief has issued. Debtor has never filed schedules. Rather, Donald Carlson has asserted his Fifth Amendment rights. Debtor's former counsel did file a partial listing of creditors. This listing shows that debtor had at least 265 creditors who have claims for goods sold and delivered over a period of time commencing in late 1988 and ending in April 1989. These creditors' claims total approximately $5.2 million.

## DISCUSSION

### A. Plaintiffs' Claims

Plaintiffs in these proceedings are all vendors who shipped product to the debtor before April 10, 1989. None of them obtained or filed UCC-1 forms which would have perfected a purchase money security interest in its products. With the possible exception of plaintiff Chemical-Ways Corporation, no plaintiff made written demand for return of the goods within 10 days of the date those goods were delivered to the debtor. Many of the plaintiffs did receive written assurances of solvency from the debtor in the form of the banker's letter and the credit references, which assurances were usually provided prior to the time the product was shipped.

The plaintiffs herein all seek return of the goods that they sold to the debtor. While articulated somewhat differently from case to case, these plaintiffs seek return of their property on four separate grounds:

1. *Theft by trick:* Plaintiffs assert that the debtor obtained the delivered goods through a massive scheme of fraud. They assert that the debtor never had any intention of paying for the product. Rather, they claim, the debtor engaged in a massive buying program with the intention of moving all the product to South Dakota and selling it fast enough to divert the liquidation proceeds to the principals of the debtor.[6] Because of this fraud, they assert, title to the delivered goods did not pass to the debtor. Plaintiffs assert that they are, therefore, entitled to judgment determining that they are the owners of the goods they sold and delivered to the debtor.

2. *Reclamation:* Further, plaintiffs assert that they are entitled to the return of the goods pursuant to Minn.Stat. § 336.2-702(2), which provides:

> Where the seller discovers that the buyer has received goods on credit while insolvent the seller may reclaim the goods upon demand within 10 days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery, the 10 day limitation does not apply.
>
> Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

---

sistent with the information supplied by the trustee to the effect that Dynamic Technologies had been in business since 1987 and had received and completed government contracts for paint shakers on occasions prior to 1989.

What the Plymouth Police Department appears to have uncovered is that Donald Carlson may have been infringing a patent on a paint shaker owned by Red Devil, Inc. Patent infringement, however, is not a crime, and perhaps that is why there have been no criminal charges. Whether Dynamic Technologies was or was not infringing the patent of Red Devil is irrelevant to these proceedings. Indeed, the fact that the Plymouth Police Department spent an extraordinary amount of time looking into possible patent infringement is somewhat startling.

6. It is difficult to reconcile such an intention with the fact that in debtor's counsel wrote a letter to all creditors on April 6, 1989, informing them of debtor's intention to liquidate and disclosing the location of the debtor's facilities in Plymouth, Minnesota and in Watertown, South Dakota.

Plaintiffs all claim that the debtor misrepresented that it was solvent within three months before the delivery of the goods sold, and consequently, their demand for reclamation need not have been made with 10 days of the date of delivery.

3. *Rescission:* Certain of the plaintiffs also assert a right to rescission pursuant to Minn.Stat. § 336.2–721, which provides:

Remedies for material representation or fraud include all remedies available under this article for nonfraudulent breach. Neither rescission of a claim nor rescission of the contract for sale nor rejection nor return of the goods shall bar or be deemed inconsistent with a claim for damages or other remedy.

Plaintiffs claim that they are entitled to rescind their contracts with the debtor based upon the debtor's fraud, which, for purposes of this motion, is assumed to be gross.

4. *Constructive Trust:* Finally, certain of the plaintiffs assert that the equities require the imposition of a constructive trust on the goods sold. This claim is based on an argument that goods obtained from plaintiffs through fraud should, in fairness, be returned to the plaintiffs.

### B. The Trustee's Response

The trustee responds that summary judgment is appropriate in these cases because none of the plaintiffs made written demand for reclamation within 10 days of the date the debtor received their products. The trustee asserts that the plaintiffs may not reclaim their product because they failed to comply with 11 U.S.C. § 546(c). She further asserts that plaintiffs are not entitled to rest on the state law remedy provided by Minn.Stat. § 336.2–702 because that remedy has been limited by 11 U.S.C. § 546(c). She asserts that however differently couched (*i.e.*, "theft by trick", reclamation, rescission, or constructive trust), the remedy plaintiffs seek is available under 11 U.S.C. § 546(c) only if the plaintiffs can establish that they made written demand for return of the goods within 10 days of the date those goods were delivered.

### C. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c), as incorporated by Bankruptcy Rule 7056, provides that summary judgment:

[S]hall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

To prevail in a motion for summary judgment the trustee must meet that standard. Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). On a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.) (*en banc*), cert. denied, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). But the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Once a motion for summary judgment has been made and supported as described above, Federal Rule of Civil Procedure 56(e) provides that a party opposing the motion may not rely on the mere allegations and denials contained in its pleadings, but must set forth specific facts to show that a genuine issue exists for trial. The evidence presented in support of or in opposition to such a motion must be competent evidence admissible in any subsequent trial. *Miller v. Solem,* 728 F.2d 1020, 1026 (8th Cir.1984). In ruling on a motion for summary judgment, the Court should not consider evidence, such as inadmissible

hearsay statements [7] or vague conclusory allegations, which would not be admissible in evidence at trial. *Id.* There is no genuine issue of fact for trial if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. at 1348, 1356, 89 L.Ed.2d 538 (1986). The Court should not "weigh the evidence," yet "if the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656 (7th Cir. 1987).

### D. Plaintiffs' Rights Outside a Bankruptcy Case

Article 2 of the Uniform Commercial Code, as adopted in Minnesota, applies to "transactions in goods." Minn.Stat. § 336.2–102. The transactions involved here were transactions in "goods." The plaintiffs sold their goods to the debtor in the ordinary courses of business of both the vendors and the vendee. Accordingly, had bankruptcy not intervened, plaintiffs would have been entitled to take advantage of the provisions of Minn.Stat. § 336.2–702. Pursuant to that statute, plaintiffs would have been entitled to recover their goods from the debtor upon a showing that the debtor received goods on credit while insolvent and 1) that they had made demand for the return of the goods within 10 days of the debtor's having received them, or 2) if no such demand had been made, upon a showing that the debtor had misrepresented its solvency to the sellers in writing within three months before delivery of the goods. Minn.Stat. § 336.2–702(2).

Plaintiffs have attempted to assert causes of action based on the common-law principles of fraud and misrepresentation:

Unless displaced by the particular provisions of this chapter, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

Minn.Stat. § 336.1–103. Plaintiffs' common-law causes of action for fraud and misrepresentation, however, have been displaced by other provisions of the UCC:

Except as provided for in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

Minn.Stat. § 336.2–702(2). Therefore, under state law, plaintiffs' sole remedy is provided for by Minn.Stat. § 336.2–702, and the conditions imposed by that statute must be present in order for the plaintiffs' causes to succeed.

### E. The Bankruptcy Code's Exclusive Remedy of Reclamation

The filing of a petition in bankruptcy creates an estate as of the date of the filing, which is comprised, with certain exceptions, of all of the debtor's legal or equitable interest in property as of the commencement of the case. 11 U.S.C. § 541. As of that date, and even for a period preceding it, the Code severely restricts those situations in which creditors who are equally situated may improve their position over others in making claims against assets of the estate. For example, the trustee of the estate is given the right to set aside prepetition fraudulent conveyances, prepetition preferential transfers, and, by use of "strong arm" powers, may extinguish the rights of persons who claim a right to the debtor's property through secret or unrecorded liens. *See* 11 U.S.C. §§ 544, 545, 547, and 548. The trustee also has the power to require the turnover of property belonging to the estate and may avoid virtually all postpetition transfers of property of the estate. *See* 11 U.S.C. §§ 542, 549, 550.

One of the few exceptions to the restrictions placed on creditors is the continuation

---

**7.** The hearsay statements contained in the investigating officer's deposition and investigation report did not fall within an exception to the hearsay rule.

of a vendor's right to reclaim goods under relevant nonbankruptcy law:

> Except as provided in subsection (d)[8] of this section, the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but—
>
>> (1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor. . . .

11 U.S.C. § 546(c). While there is some authority to the contrary,[9] the overwhelming consensus of authorities hold that the seller's right to reclamation provided by section 2–702 of the Uniform Commercial Code is recognized in bankruptcy proceedings only to the extent provided in Section 546(c) of the Bankruptcy Code. *See, e.g.,* 4 Collier on Bankruptcy para. 546.01, at 546 —6 (L. King, 15th ed. 1987); *Flav–O–Rich, Inc. v. Rawson Food Service, Inc. (In re Rawson Food Service, Inc.),* 846 F.2d 1343, 1347 (11th Cir.1988); *McCain Foods, Inc. v. Flagstaff Foodservice Co. (In re Flagstaff Foodservice Corp.),* 14 B.R. 462, 466 (Bktcy.S.D.N.Y.1981); *Ambico, Inc. v. AIC Photo, Inc. (In re AIC Photo, Inc.),* 57 B.R. 56, 59 (Bktcy.E.D.N.Y.1985); *Party Packing Corp. v. Rosenberg (In re Landy Beef Co.),* 30 B.R. 19, 20 (Bktcy.D.Mass.1983); *Dukseung, Inc. v. Wholesale Distributing Corp. (In re Wholesale Distributors Corp.),* 58 B.R. 497, 500 (Bktcy.S.D.N.Y. 1986); *Toshiba, America, Inc. v. Video King, Inc.,* 100 B.R. 1008, 1013 (Bktcy.N.D. Ill.1989); *Ecolotec, Inc. v. Deephouse Equipment Co. (In re Deephouse Equipment Co.),* 22 B.R. 255, 257–58 (Bktcy.D.

Conn.1982); *Don E. Pratt Oil Operations v. Charter International Oil Co. (In re Charter Co.),* 52 B.R. 263, 265 (Bktcy.M.D. Fla.1985).

Section 546(c) does not create any right to reclamation for vendors of goods to insolvent buyers; it merely recognizes such a right exists to a limited extent in a bankruptcy case, provided that such right exists either under common law or under statute other than the Bankruptcy Code:

> The net effect of Section 546(c) is to resolve the decisional pre–Bankruptcy Code law by not permitting the trustee or debtor in possession in a case under Bankruptcy Code to invalidate the seller's reclamation right. The trustee or debtor in possession may not assert rights as a judicial lien creditor (§ 544(a)), claim the seller's right is a statutory lien invalid under Section 545, attempt to classify the seller's right as a preference voidable under Section 547, or assert it is an impermissible postpetition transaction (§ 549). The four requirements that must be shown by the seller are:
>
>> (1) the sale to the buyer was in the ordinary course of business of the seller;
>>
>> (2) the buyer received the goods while insolvent;
>>
>> (3) The seller demanded reclamation of the goods within ten days after the buyer received the goods; and
>>
>> (4) The demand was in writing.
>
> For purpose of the Bankruptcy Code, the existence of a written misrepresentation of insolvency has no relevance and will not substitute for the ten-day written demand. Also, the greater flexibility of the U.C.C. with respect to the type of demand will not apply; for Bankruptcy

---

**8.** 11 U.S.C. § 546(d) provides special reclamation rights to vendors who have sold fish or grain.

**9.** *See, e.g., Farmers Rice Milling Co. v. Hawkins (In re Bearhouse, Inc.),* 84 B.R. 552 (Bktcy.W.D. Ark.1988). *Farmers Rice* held that where a seller had made oral demand for return of his goods within 10 days of delivery, he would not be held to the written demand required by sec-

tion 546(c). The *Farmers Rice* court recognized that it was in the minority when it concluded that section 546(c) is merely a limitation on the trustee's avoiding powers, and not a substantive declaration of a separate right of reclamation. *Id.* at 560. *See also United Beef Packers v. Lee (In re A.G.S. Food Systems, Inc.),* 14 B.R. 27, 28–29 (Bktcy.D.S.C.1980).

Code purposes, only a written demand will suffice. Outside of bankruptcy where only state law is applicable, Section 2–702 will have its full use as written. But in bankruptcy, Section 2–702 is the statutory right referred to in Section 546(c) and, therefore, subject to the conditions set forth in Section 546(c), and the Section 2–702 right is valid as against a trustee or debtor in possession.

R. Duesenberg and L. King, 3A Bender's Uniform Commercial Code Service § 13.03(4), at 13—65–66 (1982). *See also Video King*, 100 B.R. at 1013. Section 546(c) requires that the vendor attempting to reclaim must have an independent right to reclamation as provided for by state law, and "then narrows those nonbankruptcy reclamation rights by imposing additional procedural and substantive requirements before such rights will be recognized in a bankruptcy case." *Id.* This conclusion is consistent with the legislative history of section 546(c):

> The purpose of [section 546(c)] is to recognize, *in part,* the validity of section 2–702 of the Uniform Commercial Code which has generated much litigation, confusion and divergent decisions in different circuits.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 372 (1977), *reprinted in* 5 U.S.Code Cong. & Admin.News 5787, 5973, 6328 (emphasis added). *See also In re Original Auto Parts Distributor, Inc.,* 9 B.R. 469, 471 (Bktcy.S.D.N.Y.1981).

Section 546(c) is thus a narrow exception to the general rule that all transactions with the debtor are "frozen" as of the date of the filing of the petition. Because it stands as a glaring exception to the general rule of even and equitable distribution to similarly situated creditors, section 546(c) provides only limited protection.

Section 546(c) *is* the *exclusive remedy* available to vendors who are attempting to reclaim their goods. *Crown Quilt Corp. v. HRT Industries, Inc. (In re HRT Industries, Inc.),* 29 B.R. 861, 864 (Bktcy.S.D.N.

Y.1983); *Rawson Food Service, Inc.,* 846 F.2d at 1346; *Hitachi Denshi, America Ltd. v. Rozel Industries, Inc. (In re Rozel Industries, Inc.),* 74 B.R. 643, 646 (Bktcy. N.D.Ill.1987); *Allstate Fabricators Corp. v. Flaggstaff Foodservice Corp. (In re Flaggstaff Foodservice Corp.),* 56 B.R. 899, 909 (Bktcy.S.D.N.Y.1986). With the exception of plaintiff Chemical–Ways, plaintiffs admittedly did not make written demand for return of the goods within 10 days of the date of filing of the involuntary petition:

> The burden is on the party alleging a right to reclaim goods sold to a debtor prepetition to establish each element giving rise to that right by a fair preponderance of the evidence. [Citation omitted.] In the context of these proceedings this means that [plaintiff] will have to prove:
>
> 1. That it sold goods on credit to the debtor in the ordinary course of business of each.
>
> 2. That it delivered those goods to the debtor at a time when the debtor was insolvent as that term is defined by the Bankruptcy Code.
>
> *3. That within ten days after the goods were delivered to the debtor, the seller made a written demand for the return of the goods.*
>
> 4. That the debtor has possession of the goods at the time of the reclamation demand or the goods were not in the hands of a buyer in the ordinary course or a good faith purchase at the time of the demand.

*Video King,* 100 B.R. at 1013–14 (emphasis added). Thus, as a matter of law, a crucial element of plaintiffs' proof is missing, and the trustee is entitled to judgment in her favor.[10]

Plaintiffs, however, contend that section 546(c) should not provide their exclusive remedy. Certain among them advance a variety of causes of action as alternatives to their actions under section 546(c). Yet each of these theories advanced by the

---

10. Plaintiffs urge that section 546(c) is unconstitutional. They provide no support for that posi-

tion, and I therefore dismiss it.

plaintiffs are subsumed within section 546(c):

> In debtor-creditor law, there has always existed a basic problem concerning a seller's right to reclaim goods delivered to an unpaying buyer. The problem becomes further complicated when the buyer becomes insolvent and seeks protection under the United States Bankruptcy Code. When the buyer/debtor is transformed into a debtor-in-possession, the seller is particularly vulnerable, because the law seeks to also protect any innocent third-party creditors who may have relied on the apparent inventory of the debtor.
>
> Sellers and creditors have devised various legal theories to protect their interests in such goods, including factor liens, conditional sales and entrustments, but the underlying problem of deceiving other creditors of the debtor survives these theories. The Uniform Commercial Code ... attempts to give all parties in such situations, methods to protect themselves in the event of legal complications. *For unknown reasons, sellers and creditors are still inventing new legal theories, which in part seek to circumvent the requirements of the UCC.*

*CIBA–Geigy Corp. v. Flo–Lizer, Inc. (In re Flo–Lizer, Inc.),* 100 B.R. 341 (Bktcy.S. D.Ohio 1989).

### E. Theft by Trick

The first of plaintiffs' alternative causes of action alleges that debtor did not acquire title to the purchased goods because debtor acquired possession of the goods by trick or artifice. According to the plaintiffs, the property was stolen, and therefore, title never passed from them to the debtor and subsequently to the estate.

Title to the property passed according to law at the date the goods were delivered to the debtor:

> Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of security interest and even though a document of title is to be delivered at a different time or place.

Minn.Stat. § 336.2–401. "Thus ... the only way to reserve an interest in goods which have been transferred is to have a properly perfected security interest." *Ateco Equipment, Inc. v. Columbia Gas, Inc. (In re Ateco Equipment, Inc.),* 18 B.R. 917, 921 (Bktcy.W.D.Pa.1982). Plaintiffs never took action to ensure that they received the UCC–1 forms necessary to perfect security interests in the transferred goods.

■ It is true, as a general rule, that stolen property does not become property of the estate. *Heyman v. Kemp (In re Teltronics, Ltd.),* 649 F.2d 1236, 1239 (7th Cir.1981); *Bergquist v. Wiese & Cox, Ltd. (In re AEFS, Inc.),* 51 B.R. 340, 344 (Bktcy. D.Minn.1985). It is also true that, as a general rule, in transactions between *consumers* and a debtor, consumers have been allowed to obtain the return of their property based on an argument that they were defrauded into delivering the property to the debtor and, therefore, the property never became property of the estate. *See Heyman,* 649 F.2d at 1241. As between merchants engaged in transactions in goods, however, this "theft by trick" argument is merely a reclamation argument couched in different words. Since Section 546(c) provides the exclusive remedy for reclamation, the debtor's alleged intent not to pay, its alleged fraudulent misrepresentations, and its taking delivery of the goods with the alleged intention to surreptitiously transport them to another state for immediate conversion to cash, are all irrelevant. Plaintiffs have cited no case which holds that a merchant commits a theft if she takes delivery of goods from a vendor, in the ordinary courses of the vendor's and vendee's businesses, without intent or ability to pay the vendor.

A case that stands for the contrary proposition is *Deephouse Equipment Co.* In *Deephouse,* the seller did not make written demand for return of the property within 10 days of delivery. The seller argued that its goods never became property of the estate because the debtor had fraudulently

misrepresented its ability to pay and, specifically, whether it had been paid on a prior contract. The *Deephouse* court rejected this argument:

> Ecolotec's brief completely ignores § 546(c) and simply asserts that property obtained by fraud of a debtor is not the property of the estate and that courts order such property returned to its rightful owner rather than disbursed to creditors. In support of this position, Ecolotec cites *Heyman v. Kemp (In re Telronics, Ltd.)*, 649 F.2d 1236, (7th Cir.1981); *Toys "R" Us, Inc. v. Esgro, Inc. (In re Esgro, Inc.)* 645 F.2d 794 (9th Cir.1981); *Wisconsin v. Reese (In re Kennedy & Cohen, Inc.)*, 612 F.2d 963 (5th Cir.1980); *Giannone v. Cohen (In re Paragon Securities Co.)*, 589 F.2d 1240 (3rd Cir. 1978); *Nicklaus v. Bank of Russelville*, 336 F.2d 144 (8th Cir.1964). While standing for this general proposition, these cases do not deal with transactions between the defrauding buyer and seller of goods in the ordinary course of business, and all antedate the enactment of § 546(c).

*Deephouse Equipment Co.*, 22 B.R. at 257. The *Deephouse* court went on to conclude that U.S.C. § 2–702 is the sole remedy for a reclaiming seller, thereby eliminating any common-law remedy the seller might have had. Since Ecolotec did not provide written notice of its reclamation claim within 10 days of delivery of the goods, reclamation was not allowed. *See also R.J. Reynolds Tobacco Co. v. Eli Witt Co. (In re Eli Witt Co.)* 12 B.R. 757, 761–62 (Bktcy.M.D.Fla. 1981) (goods did become property of the estate even though the seller contended that they were obtained by fraud).

■ Accordingly, the assertion that the property was obtained through "theft by trick," no matter how deceitful the trick, does not provide relief in addition to that provided for by section 546(c). For several reasons, this is an equitable result. *First,* if the plaintiffs succeed here they will do so merely because they had the wherewithal to advance a lawsuit, while debtor's other creditors will be denied the goods for purposes of making equitable distribution to all creditors. That is precisely what the filing of a petition in bankruptcy is designed to avoid. *Second,* all the plaintiffs had options that would have protected their interests. They could have perfected purchase money security interests in the goods by the filing of UCC–1 statements (and by refusing to ship unless they had one), or they could have given timely notice of demand for reclamation:

> [The seller's] loss resulted from his own failure to comply with state law which would have enabled him to perfect his purchase money security interest. The loss could have been avoided through his own efforts. This is not the kind of loss equity protects against.

*Stowers v. Mahon (In re Samuels & Co.)*, 526 F.2d 1238, 1248 (5th Cir.1976) (*en banc*). *Third,* if wrongs were done, there are remedies to right them for the benefit of all the creditors of the debtor. If what the plaintiffs urge is true, that the debtor's principals were engaged in a scam to order but never pay for huge quantities of products and to immediately convert those products into cash for their own benefit,[11] then the avoidance powers of the trustee will be invoked. Actions can be brought by the trustee to recover or recoup the fruits of ill gotten gains, not in favor of a few selected creditors, but on behalf of all the debtor's unsecured creditors.

### F. Rescission

Certain of the plaintiffs also assert that they should be entitled to rescind their contracts with the debtor and thereby obtain return of their goods:

> Remedies for material representation of fraud include all remedies available under this article for nonfraudulent breach. Neither rescission of a claim or rescission of the contract for sale nor rejection or return of the goods shall bar or be deemed inconsistent with a claim for damages or other remedy.

Minn.Stat. § 336.2–721. The only way the plaintiffs could have obtained return of the goods, thus avoiding being treated like the

---

**11.** This is an unlikely scenario based on the papers on file in this case thus far.

debtor's other unsecured creditors, would have been to comply with section 546(c):

No matter how the complaints of these unpaid vendors are clothed, the principal alternative relief sought of the return of merchandise or money damages based on invoice price or an administrative claim is essentially the stuff of reclamation.... Typically, fraud pleading is the last gasp of the unpaid vendor who has missed the ten-day notice requirement of Section 546(c) or of its nonbankruptcy state law analogue, Section 2–702 of the Uniform Commercial Code ... Courts have consistently viewed these fraud allegations for what they really are: masquerading reclamation claims.

*HRT Industries,* 29 B.R. at 862. No matter how the plaintiffs have attempted to clothe their causes of action, they still amount to actions based on 11 U.S.C. § 546(c). Plaintiffs, with the possible exception of Chemical–Ways, have not met the requirements of section 546(c), and therefore must accept their fate as unsecured creditors.

### G. Constructive Trust

█ Finally, certain of the plaintiffs assert that the property should be impressed with a constructive trust. Even if imposition of a constructive trust were consistent with section 546(c) of the Bankruptcy Code (which it is not), this would not be an appropriate case in which to impose a constructive trust. The imposition of a constructive trust is an equitable remedy, which the Court has discretion to grant or deny. *Thompson v. Nesheim,* 280 Minn. 407, 414, 159 N.W.2d 910 (1968).

Plaintiffs rely primarily on a case that is factually distinguishable from the situation that gave rise to the instant adversary proceedings. *See Nicklaus v. Bank of Russelville,* 336 F.2d 144 (8th Cir.1964), *aff'g In re Bronson Woodworth, Inc.,* 229 F.Supp. 262 (E.D.Ark.1963). In *Nicklaus,* a state court had decided prepetition to impose a constructive trust in favor of a bank upon bonds that debtor had absconded with after purchasing them for the benefit of the bank. *See In re Bronson Woodworth, Inc.,* 229 F.Supp. at 263; *Nicklaus,*

336 F.2d at 145. The Court of Appeals affirmed the District Court's denial of the trustee's request for an order reversing the prepetition state court order delivering the bonds to the bank. *Nicklaus,* 336 F.2d at 145.

In contrast, the debtor in the instant case did not obtain plaintiffs' property by fraud, but by purchasing the goods on credit. Debtor merely has failed to pay for the goods it had ordered in the ordinary course of its business, which is commonly the state of affairs between a commercial debtor and its supply vendors at the time a bankruptcy petition is filed. Plaintiffs have cited no case which holds that not paying one's supply vendors constitutes fraud by the debtor. Moreover, equity would not be done by imposing a constructive trust in this instance, since doing so would result in the plaintiffs being favored over debtor's other unsecured creditors similarly situated.

ACCORDINGLY, IT IS HEREBY ORDERED that:

1. The motion of the trustee for summary judgment against plaintiff Chemical–Ways Corp. in ADV 4–89–161 is denied.

2. The motion of the trustee for summary judgment against the plaintiffs in all other actions above-entitled is hereby granted. Defendant Kathryn Page, as trustee of Dynamic Technologies Corp., shall have judgment dismissing the plaintiffs' Complaints with prejudice on the merits.

3. If the trustee still seeks an Order regarding statements made by plaintiffs' counsel accusing her of having been involved in the perpetration of theft, she shall notice a hearing and file appropriate papers on that issue.

LET JUDGMENT BE ENTERED ACCORDINGLY.