**In re HARTZ FOODS, INC., Debtor.**

**No. BKY 00–60040.**

United States Bankruptcy Court,
D. Minnesota.

June 26, 2001.

Steven B. Nosek, Dunkley, Bennett & Christensen, Minneapolis, MN, for debtor.

## ORDER

DENNIS D. O'BRIEN, Bankruptcy Judge.

At Fergus Falls, Minnesota. This matter came on for hearing before the Court on the Debtor's objection to unsecured priority claim # 29 filed by creditor Dacotah Paper Company. Steven Nosek appeared on behalf of the Debtor, Hartz Foods, Inc., and Gary Peterson, Vice President of Dacotah, appeared on behalf of Dacotah.

Based upon the proceedings and upon all the relevant files and records herein, the Court now makes this ORDER pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I. Introduction

Dacotah was a longtime wholesale supplier of paper products to Hartz Foods. On January 10, 2000, Dacotah delivered goods to Hartz. The invoice of $3,369.78 was to be paid by Hartz upon taking the delivery. However, payment was not readily available at the time of delivery. The president of Hartz apparently communicated to the vice president of Dacotah a promise to issue a check by the end of the day, and accordingly Dacotah approved the sale on credit and authorized delivery. Payment was never made and Hartz filed for bankruptcy relief under Chapter 11 just four days later on January 14, 2000.

Immediately thereafter, still on January 14, 2000 and within ten days following the invoice and delivery date, Dacotah made a written demand for reclamation pursuant to the Uniform Commercial Code and the Bankruptcy Code. The demand for reclamation was delivered to Hartz by fax, regular mail, and certified mail.

Having apparently satisfied the requirements of reclamation under state law and under § 546(c) of the Bankruptcy Code, Dacotah assumed, because it received no response from Hartz, that its claim would be granted priority by the Court as the only permissible alternative to reclamation. Accordingly, albeit without the benefit of counsel, Dacotah filed its claim as an unsecured priority to the extent of the invoice reflecting the goods delivered on credit to Hartz on January 10, 2000.

Hartz contends that in spite of Dacotah's otherwise proper demand for reclamation, its unsecured claim must be without priority for two reasons. First, Hartz claims that Dacotah's failure to file an adversary proceeding to seek reclamation constitutes a fatal procedural omission. Second, Hartz claims that even if Dacotah had filed an adversary proceeding its reclamation claim would fail because another creditor, Northern State Bank of Thief River Falls, holds a blanket security interest in all Hartz inventory, and that Dacotah's right or interest in reclamation of the goods is inferior to the Bank's secured interest in the goods.

No evidence of the Bank's overall position was introduced at the hearing; however, counsel for Hartz indicated that the Bank is believed to be oversecured. Nor is there evidence before the Court regarding the present status of the goods or the disposition of those goods and any proceeds therefrom.

## II. Discussion

*Section 546(c) In General*

"[T]he overwhelming consensus of authorities hold that the seller's right to reclamation provided by section 2–702 of the Uniform Commercial Code is recognized in bankruptcy proceedings only to the extent provided in Section 546(c) of the Bankruptcy Code." *See In re Dynamic Technologies Corp.,* 106 B.R. 994, 1003 (Bankr.D.Minn. 1989) (citations omitted).

Section 546(c) of the Bankruptcy Code provides:

Except as provided in subsection (d) of this section, the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods—

    (A) before 10 days after receipt of such goods by the debtor; or

    (B) if such 10–day period expires after the commencement of the case, before 20 days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court—

    (A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or

    (B) secures such claim by a lien.

*See* 11 U.S.C. § 546(c).

"Section 546(c) does not create any right to reclamation for vendors of

goods to insolvent buyers; it merely recognizes such a right exists to a limited extent in a bankruptcy case, provided that such right exists either under common law or under statute other than the Bankruptcy Code." *See Dynamic*, 106 B.R. at 1003; *see also Monfort, Inc. v. Kunkel (In re Morken)*, 182 B.R. 1007, 1014 (Bankr.D.Minn. 1995). "Also, the greater flexibility of the UCC" or state law will not apply; in bankruptcy the UCC right of reclamation is "subject to the conditions set forth in Section 546(c), and ... is valid as against a trustee or debtor in possession." *See Dynamic*, 106 B.R. at 1003–1004; *Morken*, 182 B.R. at 1007, 1016.[1] "Section 546(c) *is* the *exclusive remedy* available to vendors who are attempting to reclaim their goods." *Id.*

■ In addition to the express terms of § 546(c), the goods sought to be reclaimed "must be identifiable and in the possession of the debtor on the date the reclamation demand is made." *See Morken*, 182 B.R. at 1016. "[T]he seller must prove possession as part of its prima facie case." *Id.*, citing *Oliver Rubber Co. v. Griffin Retreading Co.*, 56 B.R. 239, 241 (D.Minn. 1985) ("A seller seeking reclamation ... must make a demand for the goods ... while the goods remained in the insolvent buyer's possession"), *aff'd sub nom. Griffin Retreading Co. v. Oliver Rubber Co. (In re Griffin Retreading Co.)*, 795 F.2d 676 (8th Cir.1986), discussed *infra*.

■ "If a seller has a right of reclamation and the court denies the seller that right, then, and only then, should the court grant that seller a priority or secured claim in lieu of that right." *See Morken*, 182 B.R. at 1018. "If a seller cannot es-

tablish a right of reclamation, it has no right to the priority or secured claim· that the statute provides as alternatives to reclamation." *Id.*

*Failure to File an Adversary Proceeding for Reclamation*

■ In *Griffin Retreading*, 795 F.2d at 679, the Eighth Circuit affirmed a district court's conclusion that "to require the reclaiming seller to file an adversary action would add an additional requirement or prerequisite to the right of reclamation which was not required by the term of [§ 546(c) ]." The Court held that "[t]o require the reclaiming creditor to follow its demand with an adversarial proceeding would only foster a race to the courthouse" in light of the debtor-buyer's "obligation," once it had received notice of the seller's intent to reclaim, "to hold the goods for redelivery to the seller" or seek court approval to use the goods otherwise "for the purpose of effecting a reorganization." *Id.* at 679–680.

Accordingly, the fact alone that Dacotah did not follow its demand with commencement of an adversary proceeding for reclamation does not extinguish its rights under state law or under § 546(c).

*Significance of Another Creditor with a Secured Position in the Goods*

■ Reclamation, as "the right of a seller to recover possession of goods delivered to an insolvent buyer ... is a rescissional remedy, based upon the theory that the seller has been defrauded." *See Pester Refining Co. v. Ethyl Corp. (In re Pester Refining Co.)*, 964 F.2d 842, 844 (8th Cir. 1992). "The Uniform Commercial Code

---

**1.** "Section 546(c) requires that the vendor attempting to reclaim must have an independent right to reclamation as provided for by state law, and then 'narrows those nonbankruptcy reclamation rights by imposing addi-

tional procedural and substantive requirements before such rights will be recognized in a bankruptcy case.' " *See Dynamic*, 106 B.R. at 1004.

expanded the [reclamation] remedy by defining a narrow class of cases in which reclamation would be allowed without proof of a misrepresentation as to solvency." *Id.* Minnesota has adopted the UCC reclamation provisions in Mn.Stat.Ann. § 336.2–702(2), and Minnesota law governs this transaction. *See Pester Refining,* 964 F.2d at 844 n. 2.[2]

"However, recognizing that the seller by delivering has vested the buyer with apparent authority to deal with the goods, the UCC also made the seller's reclamation right 'subject to' the rights of good faith purchasers from the buyer." *See Pester Refining,* 964 F.2d at 844. Likewise, Mn.Stat. § 336.2–702(3) provides that the "seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser under this article (section 336.2–403)." *Id.* Because "most secured creditors are good faith purchasers under the UCC," § 336.2–702(3) "has the effect, in priority terms, of placing the reclaiming seller behind the insolvent buyer's secured creditors who have security interests in the goods, *but ahead of the buyer's general unsecured creditors." See Pester Refining,* 964 F.2d at 845 (emphasis added).

■ Accordingly, "the mere presence of secured creditors with superior rights" under state law does not extinguish the seller's right of reclamation. *Id.* "[W]hen the right to reclaim is 'subject to' the rights of secured creditors, that means the right is subordinate or inferior to the security interests, not that it is automatically and totally extinguished." *Id.* at 846. Hartz cannot plausibly argue, therefore, that the

existence of the Bank and its superior secured position in the goods at issue per se eliminates Dacotah's right of reclamation or reduces the value of its right to nothing.

■ Instead there is the possibility, especially if the Bank is oversecured and because the plan in this case is not a reorganization but a liquidation, that Dacotah may yet be entitled to a priority unsecured claim. "[A]fter the secured creditors' superior interests have been satisfied or released, the reclaiming seller retains a priority interest in any remaining goods, and in any surplus proceeds from the secured creditors' foreclosure sale." *Id.*

■ However, "if an *undersecured* secured creditor forecloses on the goods to be reclaimed and uses the entire proceeds to pay down its secured debt, the seller's reclamation right is extinguished." *Id.* at 847 (emphasis added). "[T]he value of the right of reclamation may be none due to the possibility that [the secured creditor was] satisfied by the goods to be reclaimed." *Id.* "Even if the buyer has additional assets, the seller's right to reclaim affords · it no priority interests in those assets; it is relegated to its unsecured claim for the purchase price." *Id.; see also Tubos Reunidos America, Inc. v. Valley Steel Products Co., Inc. (In re Valley Steel Products Co., Inc.),* 1993 WL 90462, *6 (Bankr.E.D.Mo.1993) (a creditor who seeks reclamation cannot receive a priority claim in assets that were not subject to his right of reclamation).

**2.** The Minnesota statute provides: "Where the seller discovers that the buyer has received goods on credit while insolvent the seller may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay." *See* Mn.Stat.Ann. § 336.2–702(2).

 "When there are goods or traceable proceeds available to reclaim, the alternative remedies in § 546(c)(2) provide needed flexibility." *See Pester Refining*, 964 F.2d at 845 "But when the secured creditors have satisfied their claims *out of the goods to be reclaimed*, granting § 546(c)(2) relief would afford the reclamation seller something it does not have under the UCC—a priority interest in the buyer's assets other than the goods to be reclaimed." *Id.*

 These variables are unknown elements in this case. The Court does not know to what extent the Bank is secured; to what extent, if any, it was or will be satisfied from proceeds of the goods Dacotah sold to Hartz; or even whether the goods were sold in the ordinary course, disposed of otherwise, or not disposed of at all.[3] If the Bank is fully satisfied out of assets unrelated to the goods sought to be reclaimed, Dacotah may be entitled to a priority claim for the full value of its invoice on the goods. *See Pester Refining*, 964 F.2d at 845. Indeed, if the goods are still held by Hartz and if the Bank is sufficiently oversecured, actual reclamation may be the appropriate remedy. The Court appreciates the unlikelihood of such a situation, but makes the point that the record is incomplete.

The Court cannot determine with the inadequate record presently before it whether Dacotah is entitled to reclamation and if so to what extent the right has value. The fate of the goods following delivery is unknown as is the position of the Bank generally and with respect to the goods. The Court cannot evaluate whether either of the alternative remedies afforded by § 546(c)(2)(A) and (B) is available or appropriate.

### III. Disposition

For the reasons set forth above, IT IS HEREBY ORDERED:

1. The matter shall be set on for a ½ day evidentiary hearing;

2. The rules of discovery shall apply; and

3. The parties shall brief the issues raised by this Order.

---

3. The Court also does not know when the goods were sold, if they were, which timing could be dispositive. "[T]he language of § 546(c) and Minn.Stat. § 336.2–702(2) specifically speaks to 'goods' and not to 'proceeds.'" *See Morken*, 182 B.R. at 1017. "Creating a right of reclamation to the proceeds of goods sold prior to the date a reclamation demand is made is beyond the scope of both § 546(c) and Minn.Stat. § 336.2–702(2)." *Id.* On the other hand, if Hartz disposed of the goods after the demand for reclamation, then Hartz prevented reclamation. The Eighth Circuit has held that "[n]o action on the part of the bankrupt should be held to defeat that right" of reclamation. *See Griffin*, 795 F.2d at 679.